UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HARDEE'S FOOD SYSTEMS, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. C.A. No. 4:09 – cv – 00664 |
| JEFFREY T. HALLBECK, et al. | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR,
IN THE ALTERNATIVE, TO TRANSFER VENUE**

Defendants Jeffrey T. Hallbeck, Dianne S. Hallbeck, Scott R. Hallbeck, Robin Hallbeck, Carolyn Hallbeck ("Defendants"), by and through their undersigned attorneys, hereby submit the following Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Complaint Or, in the Alternative, to Transfer Venue.

**INTRODUCTION**

In its Complaint, Plaintiff Hardee's Food Systems, Inc. ("Hardee's") asks this Court to award it damages pursuant to agreements it had with five Wisconsin residents pertaining to a franchise formed, operated and terminated in Illinois and to grant it injunctive relief enforcing certain restrictive covenants related to real property situated in Illinois. Despite the fact that the Restaurant is located in Illinois, the Franchise operated in Illinois, all of the alleged events occurred in Illinois and portions of the requested relief relate to the use of, as well as interests in, real property located in Illinois, Plaintiff filed its Complaint here, in St. Louis, Missouri.

Hardee's motive for doing so is clear – it is attempting to deprive Defendants of their right to a proper forum by circumventing the protections afforded by 28 U.S.C. § 1391. Plaintiff's transparent attempt to forum shop should be dismissed, however, because its claims cannot be brought in this District.

If this Court were to permit Plaintiff's claims to proceed in the Eastern District of Missouri (the "District"), it would be required to adjudicate claims that lack the requisite connection to the District and to declare the parties' rights with respect to property interests located in Illinois. Such an action would contradict basic notions of judicial authority and offend the irreducible principle of local sovereignty that only the state where property is located can adjudicate upon and determine the incidents of ownership and status of that property. Thus, Plaintiff's choice of forum is nothing more than a request for this Court to impermissibly extend its reach beyond its own borders, seize Defendants' interests in property located in Illinois and declare how Illinois property can be used.

In light of the incurable absence of authority to bring this case in the District and Plaintiff's attempt to forum shop, Plaintiff's Complaint should be dismissed. In the alternative, the Court should transfer this action to the United States District Court for the Northern District of Illinois (the "Illinois District").

## FACTUAL AND PROCEDURAL BACKGROUND

### I. THE PARTIES' RELATIONSHIP

Defendants were owners and operators of Hardee's restaurant number 1503201 in Ottawa, Illinois. As a condition of being licensed to sell franchises in Illinois, plaintiff Hardee's Food Systems, Inc. (hereafter HFS or Hardee's) and/or its affiliates were required to and did register with the state of Illinois under the Illinois Franchise Disclosure Act ("IFDA"), 815 ILCS

§ 705/10. It is an express condition of the Illinois Franchise Disclosure Act that no franchisee agreement registered with the state of Illinois could contain a venue clause requiring that a franchisee submit to jurisdiction or venue outside the state of Illinois, 815 ILCS § 705/4. Further, that same Illinois Franchise Disclosure Act expressly forbids and declares null and void any attempt to bind any franchisee to a waiver of any condition of the Illinois Franchise Act or other Illinois law. 815 ILCS § 705/41.

In its February 27, 2009 termination letter issued after defendants closed their sole remaining Hardee's restaurant, plaintiff acknowledged the application of Illinois law when it asserted that:

> In accordance with Section 18 A. (1) of the Franchise agreement <u>and Illinois law</u>, based upon that abandonment, the Franchise Agreement is terminated as of February 28, 2009.

(Emphasis added) (Exhibit D to Complaint, P. 1).

Thus, as a requirement of registering to sell franchises in Illinois, plaintiff cannot require defendants to litigate a dispute outside the state of Illinois.

In addition, plaintiff was immediately advised that if it brought an action seeking to enforce its baseless claim, that defendants would bring a substantial counterclaim based upon plaintiff's failure to perform its obligations owed to defendant under the franchise agreement and other matters. (Exhibit B to Jeffrey T. Hallbeck Declaration attached). The defendants, their former restaurant, all of their witnesses, and their customers, who are also witnesses, are located in the state of Illinois.

Moreover, plaintiff has brought a claim for a permanent injunction that seeks relief that would have to be enforced in Illinois in the unlikely event that plaintiff was successful. Aside from the Illinois statutory mandate requiring that defendants not be required to litigate outside

3

the state of Illinois to which plaintiff agreed when it registered to sell franchises in the state of Illinois, the convenience of the witnesses, parties and judicial economy would best be served by the transfer of the case to the Northern District of Illinois.

**II.     HARDEE'S FAILS TO PERFORM**

The Ottawa Hardee's franchise first opened in 1974 and has been at its present location since 1984. It was once defendants' most successful store and formerly had annual sales consistently in the $1.2 million range. Defendants formerly owned 21 Hardee's restaurant franchises. The other 20 stores were either closed or sold in the time period from 1995 – 2007[1]. Indeed, defendants' Kewanee store was closed in 2006 without fanfare, even though there was nearly two years left on the franchise agreement for that store. (Hallbeck Decl. ¶ 2).

When defendants renewed the Ottawa franchise, they expected Hardee's to deliver promised advertising and support, provide a viable brand, maintain a market presence in their region and otherwise perform as the franchisor. Instead, Hardee's failed to advertise at all in defendants' market. At best, any media spillover may have originated from the Peoria market, while defendants were most closely associated with the Chicago market, where there are no Hardee's. (Hallbeck Decl. ¶ 3).

Moreover, what defendants did receive was negative backlash from their customers resulting from controversial television ads run by Hardee's in other markets. Hardee's and its affiliates used advertising monies paid by defendants and other franchisees operating under the CKE umbrella to produce television spots for Carl's Jr. and Hardee's such as "Flat Buns" and "Patty Melt" that denigrated the Hardee's brand image in defendants' market. Although those ads did not air in defendants' market, the public became aware of them and defendants received

---

[1] Defendants' information is that in roughly the same time period, more than 1,100 Hardee's restaurants have closed or gone out of business.

4

repeated complaints from resident customers in Ottawa's predominantly agricultural and union oriented community, about the unacceptable nature of these ads. (Hallbeck Decl. ¶ 4).

Support from Hardee's during defendants' final renewal term was limited to two annual visits by the Hardee's representative assigned to the Ottawa store and audits done by Eco-Sure. (Hallbeck Decl. ¶ 5).

Hardee's recognized the regional decline of the goodwill in the Hardee's brand and trademarks licensed to defendants, when it closed its Spring Valley, Illinois corporate Hardee's restaurant in April 2008. The LaSalle, Illinois News Tribune reported in the April 22, 2008 issue that Hardee's corporate restaurant in Spring Valley, Illinois had closed without notice. Hardee's company spokesperson, Jenna Petroff, commented that "Our official response is, it's a business decision." Hardee's didn't consult with defendants prior to closing the Spring Valley store, about the impact Hardee's business decision would have upon defendants' Ottawa restaurant, the sole remaining Hardee's restaurant in the Illinois Valley. Defendants did not bargain for the complete loss of Hardee's market presence in their rural, mid-state Illinois market when they renewed the franchise. (Hallbeck Decl. ¶ ¶ 6-7, Exhibit A attached).

## III. DEFENDANTS HAVE SUFFERED SIGNIFICANT LOSSES

Defendants have suffered declining net profits and/or annual losses during their renewal term. Not only were defendants losing money, but the franchise agreement was to definitively end June 18, 2010. Under the express terms of the franchise agreement, there was no possibility of further renewing the franchise. Hardee's had demanded that defendants inject more capital into the business before the end of 2009 for the following:

    a) Computer System – $15,000.00;

    b) Drive Through Timer – $4,000.00;

c) Store Remodel – $150,000.00.

(Hallbeck Decl. ¶ 8).

Hardee's not only failed to deliver to defendants a viable franchise concept and a reasonable opportunity to succeed, but affirmatively breached defendants' Ottawa, Illinois franchise agreement, by: (1) failing to provide any advertising[2]; (2) denigrating the brand and trademarks; (3) failing to provide ongoing support; (4) removing any Hardee's market presence except defendants' restaurant; and, (5) otherwise failing to perform as the franchisor.

Defendants did not bargain to become the last Hardee's outpost in their region of Illinois, which once boasted the presence of dozens and dozens of successful Hardee's restaurants. Not only are the nearest Hardee's franchised restaurants as far away as Peoria, Illinois and the Quad Cities, but the nearest Hardee's corporate store is in St. Louis, Missouri. (Hallbeck Decl. ¶ 10).

## IV. DEFENDANTS CLOSE THEIR RESTAURANT AND PLAINTIFF BRINGS SUIT.

Hardee's refused to permit defendants to close their sole remaining Hardee's restaurant, demanding that it remain open so that Hardee's could continue to collect its fees. Defendants could not continue to lose money, and closed their restaurant on February 22, 2009. The restaurant was completely deidentified. Plaintiff immediately demanded $55,601.58 in prospective royalties and fees by letter dated February 27, 2009 to which defendants responded on March 31, 2009. (Exhibit B to J. Hallbeck Declaration). Defendants advised plaintiff that if plaintiff filed suit, that defendants would bring a substantial counterclaim. (Hallbeck Decl. ¶ 10).

Plaintiff filed suit and claims not only $55,601.58 in damages but seeks permanent injunctive relief based upon information and belief. (Hallbeck Decl. ¶ 12).

---

[2] While paragraph 5 of the franchise agreement does not provide for equal levels of advertising in all markets, it does not permit Hardee's to provide no advertising support in return for the substantial advertising fees paid by defendants.

6

## V. APPLICABLE STATUTORY AND CONTRACT PROVISIONS

### A. Operative Provisions of the Illinois Franchise Disclosure Act

As noted, plaintiff was required to register with the state of Illinois and agreed to follow Illinois law and procedure in return for the privilege of selling its Hardee's franchises in the state of Illinois. The act specifically requires registration prior to the sale of any franchise. 815 ILCS § 705/10.

In addition, the Act is to be "liberally construed to effect the purposes thereof." 815 ILCS § 705/43. The burden of proof is upon any person claiming that the Act does not apply. 815 ILCS § 705/42.

The two sections of the statute which are a focus of this memorandum are the following:

**§ 4. Jurisdiction and Venue.** Any provision in a franchise agreement that designates jurisdiction or venue in a forum outside of this State is void, provided that a franchise agreement may provide for arbitration in a forum outside of this State.

**§ 41. Waivers Void.** Any condition, stipulation, or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this Act or any other law of this State is void. This Section shall not prevent any person from entering into a settlement agreement or executing a general release regarding a potential or actual lawsuit filed under any of the provisions of this Act, nor shall it prevent the arbitration of any claim pursuant to the provisions of Title 9 of the United States Code.

### B. Applicable Contract Language

The franchise agreement contains clauses on choice of law and venue, upon which plaintiff bases its filing in this Court, which violate the Illinois Franchise Disclosure Act:

### 27. GOVERNING LAW, FORUM AND LIMITATIONS

**A.** This Agreement and any claim or controversy arising out of, or relating to, rights and obligations of the parties under this Agreement and any other claim or controversy between the parties shall be governed by and construed in accordance with the laws of the State of Missouri without regard to conflicts of laws principles. Nothing in this Section is intended, or shall be deemed, to make any Missouri law regulating the offer or sale of franchises or the franchise

7

relationship applicable to this Agreement if such law would not otherwise be applicable.

**B.** The parties agree that, to the extent any disputes cannot be resolved directly between them, Franchisee shall file any suit against HFS only in the federal or state court having jurisdiction where HFS' principle offices are located at the time suit is filed. HFS may file suit in the federal or state court located in the jurisdiction where its principal offices are located at the time suit is filed. HFS may file suit in the federal or state court located in the jurisdiction where its principal offices are located at the time suit is filed or in the jurisdiction where Franchisee resides or does business or where the Franchised Restaurant is or was located or where the claim arose. Franchisee consents to the personal jurisdiction of those courts over Franchisee and venue in those courts.

The franchise agreement also contains a 6/19/05 "Addendum to Hardee's Restaurant Franchise Agreement Required for Illinois Franchisees." The addendum appears at Filed pages 31 – 32 of Document 1 – 3 of Exhibit A to the Complaint and states in the opening paragraph:

**1.** The provisions of this Addendum form an integral part of, and are incorporated into the Franchise Agreement. This Addendum is being executed because: **(A)** the offer or sale of the franchise to Franchisee was made in the State of Illinois; **(B)** Franchisee is a resident of the State of Illinois; and/or **(C)** the Franchised Restaurant will be located or operated in the State of Illinois.

The addendum goes on to misquote certain sections of the Illinois statute. Paragraph 4 of the addendum states:

**4.** The following sentence is added to the end of Section 27.B.:
Section 4 of the Illinois Franchise Disclosure Act provides that any provision in a franchise agreement which designates jurisdiction or venue in a forum outside of Illinois is void with respect to any cause of action which otherwise is enforceable in Illinois.

Illinois Addendum, ¶ 4.

The statute itself does not contain the language found at the end of paragraph 4 which states, "with respect to any cause of action which is otherwise unenforceable in Illinois." 815 ILCS § 705/4. In addition, however, the Illinois addendum acknowledged that there could be no

8

waiver of the provisions of the Illinois Franchise Disclosure Act, which contradicts plaintiff's attempted limitation of the jurisdiction and venue clause in paragraph 4 of the addendum:

> **6.** The following sentence is added to the end of Section 29:
>
> Section 41 of the Illinois Franchise Disclosure Act states that any condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of the Act is void.

Illinois Addendum, ¶ 6.

However, even paragraph 6 of the addendum is an incomplete quote of the statute to which it refers. Paragraph 6 of the Illinois addendum improperly limits the statutory language of 815 ILCS § 705/41, because it is limited to the Illinois Franchise Disclosure Act and does not include the statutory wording "or any other law of this state."

## ARGUMENT

### I. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR IMPROPER VENUE.

#### A. Motion to Dismiss Standard

Where a claim has been brought in an improper venue, the defendant may challenge that claim by way of a motion to dismiss. See Fed. R. Civ. P. 12(b)(3). In the context of a Rule 12(b)(3) motion, the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party. See Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1129 (9th Cir. 2004). When ruling on a motion to dismiss under 12(b)(3), however, the court assumes the truth of the plaintiff's allegations unless they are contradicted by the defendant's affidavits. See AGA Shareholders, LLC v. CSK Auto, Inc., 467 F. Supp. 2d 834, 842 (N.D. Ill. 2006); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352 (3d ed. 2009) ("All well-pleaded allegations in the

complaint bearing on the venue question generally are taken as true, unless they are contradicted by the defendant's affidavit."). Thus, in analyzing a defendant's Rule 12(b)(3) motion, the district court is free to consider facts outside of the pleadings, including especially those contained in the Hallbeck declaration. See Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996).

> B. **Plaintiff's Complaint Should Be Dismissed Because There Is Not a Substantial Connection Between Plaintiff's Claims And the Eastern District of Missouri.**

In its Complaint, Hardee's asserts claims against its former franchisees, which arise out the parties' agreements that governed their franchise relationship. To back these claims, Plaintiff quotes from the parties' agreement liberally and with meticulous detail. Noticeably absent from Plaintiff's Complaint are any factual allegations establishing the District as the proper forum for this dispute. Rather, Plaintiffs allege only bare legal conclusions that "[v]enue is proper in this District pursuant to 28 U.S.C. § 1391" without so much as identifying the subparagraph (or even the paragraph) of Section 1391 that supports its questionable choice of forum. (Compl. ¶ 6.)

> For venue to be proper in a diversity case such as this, [3] the action must:
>
> be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391 (a). Given that Hardee's has plead subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and alleged that all of the Defendants are "residents of Wisconsin," (Compl. ¶¶ 3, 4), Defendants will presume that Hardee's venue allegation is premised on 28 U.S.C. §

---

[3] Due to the enigmatic nature of Paragraph 6 of the Complaint, Defendants will look to Plaintiff's other allegations to surmise the specific provision of section 1391 that Plaintiff relied on as the legal basis for claiming venue is proper in the District.

1391(a)(2) because while its applicability to the District is specious at best, there is even less of a legal basis for claiming venue based on the remaining provisions of section 1391.

In determining whether venue is proper under section 1391(a)(2), the relevant inquiry is whether "the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 563 (8th Cir. 2003) (citing Setco Enter. v. Robbins, 19 F.3d 1278, 1281 (8th Cir. 1994)).

As none of Plaintiff's claims have the requisite connection to the District, Plaintiff's Complaint should be dismissed.

### 1.   *Venue is not proper as to Counts I and II.*

The allegations of Plaintiff's Complaint, along with the Declaration of Jeffrey T. Hallbeck conclusively show that Counts I & II do not have a substantial connection to the District.

In analyzing the forum's connection to the claim, the proper focus of that inquiry is on the "relevant activities of the defendant, not the plaintiff." See Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995); Solomon v. Engel, No. 4:07-CV-472, 2007 WL 1965539, at *2 (E.D. Mo. July 2, 2007) ("In making this determination, a court should focus on relevant activities of the defendant, not of the plaintiff."). Plaintiff's claims in Counts I & II are in no way based on allegations concerning an action or omission that occurred in the District. Rather, these claims are founded on actions and omissions that took place within the Northern District of Illinois in that they are based on allegations of "the Hallbecks' unauthorized cessation of operations [of a restaurant located within the Illinois District], closure of the Restaurant [located within the Illinois District], and abandonment of the franchise [located within the Illinois District]." (Compl. ¶¶ 20, 24.) To support it's assertion that these alleged events constituted a breach of the

agreements, Plaintiff points to Defendants' sales figures for a restaurant located in the Illinois District, which were based on countless transactions that occurred within Illinois District. Moreover, these claims are asserted against five defendants – none of which are residents of Missouri. (See Compl. ¶ 3.)

Aside from the allegations in the Complaint, the underlying documents also reveal an obvious disconnect between the District and the Plaintiff's claims. The Franchise Agreement and the Guarantee were not executed in Missouri; rather, the execution of these agreements took place in Wisconsin. (See Decl. of Jeffrey T. Hallbeck ¶ 2.) This clear separation is spelled out further in the agreements themselves. In the Addendum to the Hardee's Restaurant Franchise Agreement Required for Illinois Franchisees ("Illinois Addendum"), the parties expressly agreed that it was "entered into simultaneously with the execution of the Franchise Agreement" and was "being executed because: (A) the offer or sale of the franchise to Franchisee was made in the State of Illinois; (B) Franchisee is a resident of the State of Illinois; and/or (C) the Franchise Restaurant will be located or operated in the State of Illinois." (See Compl. at Exh. A, Doc. 1 – 3 at filed page 31, Illinois Addendum ¶ 1.) The Illinois Addendum goes on to modify the Franchise Agreement, stating that "the Illinois Franchise Disclosure Act shall govern this Agreement." (See Compl. at Exh. A, Doc. 1 – 3 at filed page 31, Illinois Addendum ¶ 1.)

The detachment of Plaintiff's claims from the District is even more pronounced when considered alongside the State of Illinois's statutorily expressed interest in the treatment of Illinois franchisees. This interest can be found in Illinois's strong public policy in overriding "[a]ny provision in a franchise agreement that designates jurisdiction or venue in a forum outside of [Illinois]." 815 ILL. COMP. STAT. 705/4; see also Franklin Sys., Inc., 883 F. Supp. 246, 250-51 (N.D. Ill. 1995) ("This Court finds that Illinois has a strong public policy in overriding the

12

consent to jurisdiction provision in … the franchise agreement."); Flynn Beverage Inc. v. Joseph E. Seagram & Sons, Inc., 815 F. Supp. 1174, 1178 (N.D. Ill. 1993); Hengel, Inc. v. Hot N' Now, Inc., 825 F. Supp. 1311, 1316-17 (N.D. Ill. 1993).

In sum, the fact that this action was filed in the District defies both common sense and core principles of federal venue law. Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995) ("One of the central purposes of statutory venue is to ensure that a defendant is not 'haled into a remote district having no real relationship to the dispute.'") (quoting Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994)). As such, Counts I and II should be dismissed for improper venue.

### 2. *Venue is not proper as to Count III.*

Plaintiff's selection of the District is even more problematic with respect to Count III. While venue for Count III shares many of the same defects as Counts I and II, discussed *supra*, it is also improper because Plaintiff is asking this Court to enter an order that would directly impact the title to real property situated outside of the Court's jurisdiction boundaries.

It is well-settled under federal law that "courts may not exercise jurisdiction over any 'local' action involving real property unless the property at issue is found within the territorial boundaries of the state where the court is sitting." See Bigio v. Coca-Cola Co., 239 F.3d 440, 450 (2d Cir. 2000); see also Trust Co. Bank v. U.S. Gypsum Co., 950 F.2d 1144, 1148 (5th Cir. 1992) (recognizing that "the common law local action doctrine has become ingrained in American jurisprudence. State and federal courts alike have recognized and applied the rule"). This mandate is rooted in the common law principle that "[a] decree cannot operate beyond the state in which the jurisdiction is exercised." Watts v. Waddle, 31 U.S. 389, 400 (1832). Indeed, Missouri courts have recognized that in actions seeking injunctive relief, "where the principal

fact involved (upon which the right to exercise the restraint depends) is that of the title to the land in question, the court will refuse to intervene even though the necessary parties are properly before it." See St. Louis Smelting & Ref. Co. v. Hoban, 209 S.W.2d 119, 124 (Mo. 1948).

While it is true that "equitable relief by injunction will not be denied in a proper case, where title or the right to possession is only incidentally and collaterally involved," this is not such a case. See id. Through its requested relief, Plaintiff asks this Court to enter an order that would require the "restrictive covenants [found in Paragraph 17.C.3 of the Franchise Agreement] ***become a matter of public record***," presumably through the recording of those deed restrictions with the Illinois recorder of deeds. (See Compl. at Exh. A, ¶ 17.C.3) (emphasis added). As such, the relief requested in Count III directly impacts how real property can be used, and therefore, it must be brought in Illinois where the property is located. See Rogers v. Clipper Cruise Lines, Inc., 650 F.Supp. 143, 144 (D.Colo. 1986) (holding that an action "to determine the benefits and burdens of land … must be resolved were the land is located"); State Dep't of Natural Resources v. Antioch University, 533 So.2d 869, 871 (Fla. Dist. Ct. App. 1988) (holding that an action, seeking a declaration that defendant had violated certain conditions and covenants of a deed, was a local action); see also Hayes v. Gulf Oil Corp., 821 F.2d 285, 286 (5th Cir. 1987) (holding that a dispute as to the occurrence of a condition giving rise to a reversionary interest in a lease was a local action); Chateau Lafayette Apartments v. Meadow Brook Nat'l Bank, 416 F.2d 301, 302-03 (5th Cir. 1969) (holding that an action for total or partial cancellation, reformation and erasure of a mortgage due to usurious interest rates was a local action); Grayson v. Garratt, 90 S.W.2d 500, 503 (Ark. 1936) (holding that an action to cancel a deed and restore the property to the plaintiff was a local action); 21 C.J.S. *Courts* § 22 (1990) ("The class of actions which are local rather than transitory in nature includes not only actions

14

involving title to real estate, but all actions arising out of a local subject, or a local right or interest.").[4] Thus, venue is improper as to Count III.

## II.  IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF ILLINOIS.

### A.  Standard Under 28 U.S.C. § 1404(a)

Pursuant to § 1404(a), a civil action may be transferred "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

### B.  Defendants' Motion to Transfer Should Be Granted.

"The initial inquiry in ruling on a motion under § 1404(a) is whether this case 'might have been brought' in the Northern District of Illinois." See Maritz Inc. v. C/Base, Inc., No. 406-CV-761 CAS, 2007 WL 433378, at *9 (E.D. Mo. Feb. 6, 2007). For the reasons discussed *supra*, venue would be proper in the Northern District under 28 U.S.C. § 1391(a)(2).[5]

In determining whether to transfer determining whether or not to transfer venue, courts must consider the three general categories of factors stated in § 1404(a): (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) whether the transfer would be in the interest of justice. See Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997). "Courts have not, however, limited a district court's evaluation of a transfer motion to these enumerated factors. Instead, courts have recognized that such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Id.

---

[4] This memorandum does not analyze the legal sufficiency of any of plaintiff's legal claims which defendants believe are baseless as noted in Exhibit B to the Hallbeck declaration.

[5] Venue would also be proper in the United States District Court for the Western District of Wisconsin in that all of the defendants, as residents of St. Croix, County, reside in the Western District of Wisconsin. See 28 U.S.C. § 1391(a)(1).

15

Of the three enumerated factors, "[c]onvenience of the witnesses is a primary, if not the most important, factor in considering a motion under § 1404(a)." Maritz Inc., 2007 WL 433378, at *9.[6] This factor tips in favor of Defendants as the convenience of witnesses would be best served by transferring this case to the Northern District of Illinois. In support of this position and to aid the Court in balancing the convenience of the witnesses, Defendants have attached the Declaration of Jeffrey T. Hallbeck, which identifies: (1) who the witnesses are; (2) where they reside; (3) what their expected testimony is; or (4) how many witnesses there are. Defendants have identified two primary witnesses and are working on the identification of multiple other witnesses, all of whom are residents of rural Illinois. (Hallbeck Decl. ¶¶ 13-15).

The "convenience of the parties" prong likewise favors Defendants. Plaintiff's only connection to the District is that its corporate headquarters are located in St. Louis, Missouri. Plaintiff may also attempt to rely on its choice of venue clause, which is void under Illinois law. On the other hand, the Defendants are five individuals who reside over five hundred miles away. Additional factors, which courts have considered in a deciding the "convenience" prongs include: (1) accessibility of records and documents; (2) the location where the conduct occurred; and (3) the applicability of each state's forum law. See id. at *9 n.3 (citing Terra Int'l, Inc., 119 F.3d at 696). As previously discussed, all of these factors decidedly tip in favor of transferring venue to the Northern District of the events alleged in the Complaint occurred in the Illinois District, and Illinois has a strong public policy and interest that favors litigating claims regarding Illinois franchises in Illinois. (Hallbeck Decl. ¶¶ 2-16).

---

[6] While "a ***valid and applicable*** forum selection clause in a contract is 'a significant factor that figures centrally in the district court's calculus,'" the forum selection clause found in the Franchise Agreement is neither valid, nor applicable given that its inclusion directly contradicts Sections 4 and 41 of the IFDA. See Terra International, Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 691 (8th Cir. 1997) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)) (emphasis added). Therefore, it should not factor in the Court's analysis.

16

Finally, the "interest of justice" prong also favors transferring venue to the Illinois District. In balancing this prong, courts look to the following factors: (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law. See id. at *9 n.3 (citing Terra Int'l, Inc., 119 F.3d at 696). Of these seven factors, the only one that favors Plaintiff is its choice of forum, and that factor should be disregarded given that the District lacks the requisite connection to Plaintiff's claims under § 1391(a)(2). The remaining factors, however, each favor the Defendants. Judicial economy would be favored by transfer in that Defendants will assert counterclaims against Plaintiff in Illinois for its failure to fulfill its obligations under the parties' agreements and Illinois law. The comparative cost to the parties of litigating in each forum factor and the obstacles to a fair trial factor are similarly skewed in favor of the Illinois District in that these five individuals will incur substantial cost and expense fighting a large corporation with a national presence that filed this action in its own backyard, which is located well over five hundred miles away from the Defendants' homes. The final two factors – choice of law and advantages of having a local court determine questions of local law – similarly support transfer of this action to the Illinois District. As previously stated in this memorandum, Illinois has stated a strong public policy in favor of having Illinois courts adjudicate disputes concerning Illinois franchises and determining issues arising under the Illinois Franchise Disclosure Act, which plaintiff expressly incorporated into its Illinois Addendum to the franchise agreement and the termination letter. (Exhibits A and D to Complaint).

**CONCLUSION**

Based on the foregoing and in the event the Court denies Defendants' Motion to Dismiss, the Court should enter an order granting Defendant's Motion and transferring this case to the United States District Court for the Northern District of Illinois, a proper forum.

WHEREFORE, Defendants pray that the Court grant the following relief:

A.  Dismiss the case as venue is not proper in this District;

B.  In the alternative, transfer the case to the Northern District of Illinois; and

C.  Grant such other and further relief as may be fair and just.


Dated: June 11, 2009                                        Respectfully submitted,

                                                            GREENSFELDER, HEMKER, & GALE, P.C.

                                                            By    /s/ Gregory C. Mollett
                                                                  Gregory C. Mollett, 85999
                                                                  gcm@greensfelder.com
                                                                  Gregory E. Anderson, #537015
                                                                  gea@greensfelder.com
                                                                  10 South Broadway, Suite 2000
                                                                  St. Louis, Missouri 63102
                                                                  (314) 241-9090
                                                                  (314) 345-4792 facsimile

                                                                         and

                                                                  L. Michael Hankes
                                                                  mh@hankeslaw.com
                                                                  63 Commercial Wharf
                                                                  Boston, MA 02110
                                                                  (617) 723-1144
                                                                  (617) 723-0304 facsimile
                                                                  *Pro Hac Vice Application To Be Filed*

                                                                  **Attorneys for Defendants**

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following:

Charles A. Seigel, Esq.
cas@stolarlaw.com
Michael A. Fisher, Esq.
maf@stolarlaw.com
Matthew J. Aplington, Esq.
maplington@stolarlaw.com
911 Washington Avenue, 7th Floor
St. Louis, Missouri 63101



      /s/ Gregory C. Mollett