UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HARDEE'S FOOD SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> JEFFREY T. HALLBECK <br> Serve at: 200 Oakridge Drive North <br> Hudson, WI 54016 <br><br> DIANE S. HALLBECK <br> Serve at: 200 Oakridge Drive North <br> Hudson, WI 54016 <br><br> SCOTT R. HALLBECK <br> Serve at: 1115 Crest View Drive <br> Hudson, WI 54016 <br><br> ROBIN HALLBECK <br> Serve at: 1115 Crest View Drive <br> Hudson, WI 54016 <br><br> CAROLYN J. HALLBECK <br> Serve at: 924 Coyote Ln. <br> Hudson, WI 54016 <br><br> Defendants. | Case No. C.A. No. 4:09 – cv – 00664 |

## DECLARATION OF JEFFREY T. HALLBECK

I, Jeffrey T. Hallbeck declare as follows:

1. My name is Jeffrey T. Hallbeck. I am a defendant in this action and a principal of Halcyon, Inc. I have personal knowledge of the facts and information set forth in this declaration, and if called upon as a witness herein, would be competent to testify and would do so as to the same.

2.  The Ottawa Hardee's franchise first opened in 1974 was located at its present location from 1984 – 2009. It was once our most successful store and formerly had annual sales consistently in the $1.2 million range. We formerly owned 21 Hardee's restaurant franchises. The other 20 stores were either closed or sold in the time period from 1995 – 2007. At the time we renewed the Ottawa franchise, we closed our Kewanee store without fanfare, even though there was nearly two years left on the franchise agreement for that store. It is my information and belief that we all executed the renewal franchise documents in Wisconsin, not in Missouri.

3.  When we renewed the Ottawa franchise, we expected Hardee's to deliver promised advertising and support, provide a viable brand, maintain a market presence in our region and otherwise perform as the franchisor. Instead, Hardee's failed to advertise at all in our market. At best, any media spillover may have originated from the Peoria market, while our Ottawa store was most closely associated with the Chicago market, where there are no Hardee's.

4.  Instead, we received negative backlash from their customers resulting from controversial television ads run by Hardee's in other markets. Hardee's and its affiliates used advertising monies paid by other franchisees and us operating under the CKE umbrella to produce television spots for Carl's Jr. and Hardee's such as "Flat Buns" and "Patty Melt" that denigrated the Hardee's brand image in our market. Although those ads did not air in our market, the public became aware of them and we received repeated complaints from resident customers in Ottawa's predominantly agricultural and union oriented community, about the unacceptable nature of these ads.

5.  Support from Hardee's during our final renewal term was limited to two visits per

year by the Hardee's representative assigned to the Ottawa store and audits done by Eco-Sure.

6. Hardee's recognized the regional decline of the goodwill in the Hardee's brand and trademarks licensed to us, when it closed its Spring Valley, Illinois corporate Hardee's restaurant in April 2008. The LaSalle, Illinois News Tribune reported in the April 22, 2008 issue that Hardee's corporate restaurant in Spring Valley, Illinois had closed without notice. Hardee's company spokesperson, Jenna Petroff, commented that "Our official response is, it's a business decision." (Attached as Exhibit A is a true copy of a newspaper article about Hardee's closure of its Spring Valley, Illinois corporate store).

7. Hardee's didn't consult with us prior to closing the Spring Valley store, about the impact Hardee's business decision would have upon our Ottawa restaurant, the sole remaining Hardee's restaurant in the Illinois Valley. We did not bargain for the complete loss of Hardee's market presence in our rural, mid-state Illinois market when we renewed the franchise.

8. We suffered declining net profits and/or annual losses during our renewal term. Not only were we losing money, but the franchise agreement was to definitively end June 18, 2010. Under the express terms of the franchise agreement, there was no possibility of further renewing the franchise. Hardee's had demanded that we inject more capital into the business before the end of 2009 for the following:

    a) Computer System – $15,000.00;

    b) Drive Through Timer – $4,000.00;

    c) Store Remodel – $150,000.00.

9.     In its complaint, Hardee's noted that we achieved our highest sales in 2008 during the renewal term. In order to achieve those higher sales, we ran repeated discounting programs and gave away free food that negatively impacted our bottom line. Labor costs are also significantly higher in Illinois because of the Illinois minimum wage structure and the necessity for paying higher wages to attract and retain capable employees. Those higher labor costs also negatively impacted our bottom line.

10.    We did not bargain to become the last Hardee's outpost in our region of Illinois, which once boasted the presence of dozens and dozens of successful Hardee's restaurants. Not only are the nearest Hardee's franchised restaurants as far away as Peoria, Illinois and the Quad Cities, but the nearest Hardee's corporate store is in St. Louis, Missouri, which is a very different market than ours.

11.    Hardee's refused to permit us to close our sole remaining Hardee's restaurant, demanding that it remain open so that Hardee's could continue to collect its fees. We could not continue to lose money, and closed our restaurant on February 22, 2009. The restaurant was completely deidentified. Plaintiff immediately demanded $55,601.58 in prospective royalties and fees by letter dated February 27, 2009 to which we responded on March 31, 2009. (Attached as Exhibit B is a true copy of our March 31, 2009 response). We advised plaintiff that if plaintiff filed suit, that we would bring a substantial counterclaim. (Exhibit B).

12.    Plaintiff not only claims $55,601.58 in unsupported and speculative damages but seeks permanent injunctive relief based upon information and belief.

13.    Our restaurant and its operation was located and operated in Ottawa, Illinois. The majority of the witnesses that we would call to defend Hardee's claims and to prosecute

4

our counterclaims reside in the State of Illinois. Defendants have not yet been able to identify all the customers that we would call as witnesses but the following witnesses are likely to be called on our behalf:

    a.    Kathy Burress, Manager – Ottawa, Illinois;

    Ms. Burress would testify about the operation of the restaurant, sales, customer complaints, the community composition, labor costs, lack of advertising and support, and our efforts to maintain profitability. Ms. Burress will also testify that upon closure of our restaurant, our Franchise Business Consultant, George Collins, offered her employment, but would have required her to move.

    b.    Dorothy Dale, Assistant Manager – Ottawa, Illinois;

    Ms. Dale would testify about the operation of the restaurant, sales, customer complaints, the community composition, labor costs, lack of advertising and support, and our efforts to maintain profitability.

14. In addition, we expect to call multiple customers from the former Breakfast Club at our Ottawa, Illinois restaurant who reside in the Ottawa, Illinois area, that we are in the process of identifying and locating.

15. We do not have the resources to conduct our defense that Hardee's has available to its prosecution of this case and it is unlikely that we could produce these witnesses in St. Louis, Missouri.

16. We have removed all of our records from the now closed restaurant in Ottawa, Illinois to Wisconsin. It is my information and belief that there are no remaining Hardee's restaurants within 50 miles in any direction from our former Ottawa, Illinois restaurant.

We have not received any offers to purchase our former restaurant property to date.

I declare under the pains and penalties of perjury that the foregoing is true and correct. Subscribed and sworn to this 10 day of June, 2009.

_____
Jeffrey T. Hallbeck