**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| HARDEE'S FOOD SYSTEMS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:09-cv-00664-CAS |
| | ) |
| JEFFREY T. HALLBECK, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR TO TRANSFER VENUE**

COMES NOW Plaintiff Hardee's Food Systems, Inc. ("Hardee's"), and for its Memorandum of Law in Opposition to Defendants' Motion to Dismiss or to Transfer Venue (the "Motion"), states as follows.

**INTRODUCTION**

Hardee's, which at all relevant times had its principal place of business in St. Louis, sued Defendants in this Court for breach of a Franchise Agreement that Defendants had returned to St. Louis for Hardee's signature and that Hardee's entered into in St. Louis. Under the Franchise Agreement, Hardee's provided services (including the right to use its service mark and its operating procedures, training, and marketing materials) from St. Louis to Defendants. Moreover, Defendants regularly communicated with Hardee's in St. Louis regarding the formation of the contract, their performance under the contract, and their breach of the contract.

Hardee's chose to sue in this District because its witnesses and evidence are located here. Nonetheless, Defendants have moved to dismiss or transfer, arguing that this action lacks "the requisite connection to [this] District." Their motion should be denied.

## FACTS

Hardee's is engaged in the business of operating and licensing others to operate quick service restaurants using the "HARDEE'S®" service mark and Hardee's proprietary methods and procedures. This diversity case arises out of Defendants' agreement to operate a HARDEE'S® restaurant in Ottawa, Illinois pursuant to a HARDEE'S® Restaurant Renewal Franchise Agreement (the "Renewal Agreement") dated June 19, 2005. Stover Affidavit, ¶ 4. In addition to being bound by the terms of the Renewal Agreement, all but one of Defendants personally guaranteed the franchisee's performance under the Renewal Agreement pursuant to an adjunctive Guarantee and Assumption of Franchisee's Obligations (the "Personal Guarantee"). Stover Affidavit, ¶ 5.

Since 2001, Hardee's has maintained its home office and principal place of business in St. Louis, Missouri. Stover Affidavit, ¶ 3. Each of Defendants is a resident of Hudson, Wisconsin. See Defendants' Memorandum at 1 (the agreement at issue was between Hardee's and "five Wisconsin residents").[1] The causes of action asserted in Hardee's Complaint arise out of Defendants' abandonment of their obligations under the Renewal Agreement and the Personal Guarantee midway through the term of their franchise.

Prior to Defendants' entry into the Renewal Agreement and the Personal Guarantee, they had been franchisees of Hardee's at various locations for many years. Declaration of

---

[1] Thus, Defendants' statement at page 3 of their Memorandum that "The defendants . . . are located in the state of Illinois" is, by their own admission, not correct. Assuming that at least some of Defendants intend to testify on their own behalf, their statement that "all of their witnesses . . . are located in the state of Illinois" (id.) is likewise not correct.

2

Jeffrey Hallbeck, ¶ 2, attached to Defendants' Memorandum. One of those franchises was HARDEE'S® Restaurant Number 1503201 in Ottawa, Illinois (the "Ottawa Location"). The term of Defendants' prior Franchise Agreement for the Ottawa Location was set to expire on June 18, 2005. Stover Affidavit, ¶ 6. In early 2005, Hardee's and Defendants began a series of communications regarding the expiration of Defendants' prior Franchise Agreement for the Ottawa Location. Stover Affidavit, ¶7. On May 25, 2005, Hardee's sent a letter from its home office in St. Louis, Missouri to all of Defendants in Hudson, Wisconsin advising them of their right to renew their franchise agreement and setting forth the terms upon which renewal would be based. Stover Affidavit, ¶ 8; Exhibit 1.

In response, Defendant Jeffrey Hallbeck sent a fax to Hardee's at its home office in St. Louis, Missouri advising Hardee's that Defendants desired to enter into a five-year extension of their franchise agreement for the Ottawa Location and inviting Hardee's to contact him regarding the renewal. Stover Affidavit, ¶ 9; Exhibit 2.

In response to Defendants' indication of their desire to renew their franchise for the Ottawa Location, Hardee's sent letters on both September 13, 2005 and January 4, 2006 from its home office in St. Louis, Missouri to Defendants in Hudson, Wisconsin. Stover Affidavit, ¶ 10; Exhibits 3 and 4, respectively. Those letters enclosed the Renewal Agreement and the Personal Guarantee, and instructed Defendants to sign the documents and return them, along with the required renewal fee, to Hardee's home office in St. Louis, Missouri for execution by Hardee's. Stover Affidavit, ¶ 11. Hardee's further indicated that, once it had received the executed Renewal Agreement and Personal Guarantee from the Hallbecks, it would sign the Renewal Agreement and return a fully-executed original of the Renewal Agreement to Defendants in Hudson, Wisconsin. Stover Affidavit, ¶ 11.

Defendants executed the Renewal Agreement and the Personal Guarantee in Hudson, Wisconsin and sent them, together with the renewal fee, to Hardee's at its home office in St. Louis, Missouri.  Stover Affidavit, ¶ 12.  Hardee's then approved and accepted the Renewal Agreement and Personal Guarantee and executed the Renewal Agreement in St. Louis, Missouri.  Stover Affidavit, ¶ 12.  By its letter dated April 6, 2006, Hardee's returned a fully-executed original of the documents to Defendants in Hudson, Wisconsin. Stover Affidavit, ¶ 12; Exhibit 5.

Throughout the course of the parties' performance under Defendants' prior Franchise Agreement and the Renewal Agreement, Defendants received support from Hardee's home office in St. Louis, Missouri with respect to operational aspects of the Ottawa Location and other HARDEE'S® restaurants owned and operated by Defendants.  Stover Affidavit, ¶ 13.  Examples of the operational support services provided to Defendants from Hardee's home office in St. Louis, Missouri included: (1) development of training guides and operations manuals; (2) development of new products; (3) creation of local store marketing materials; (4) negotiation and execution of vendor contracts for the benefit of franchisees such as Defendants; (5) development and presentation of restaurant operations training courses; (6) strategic planning; and (7) development of construction materials and guides for the improvement of HARDEE'S® restaurants such as the Ottawa Location.  Stover Affidavit, ¶ 14.

Defendants, as franchisees, affirmatively took advantage of some of these services.  To that end, Barbara Sullivan and Kathy Burress, two representatives of Defendants who were employed by them in the operation of the Ottawa Location, attended Hardee's "Star Academy" training program in St. Louis, Missouri in December of 2003 and August of 2004, respectively.  Stover Affidavit, ¶ 15.  In addition, in April of 2006, Defendant Jeffrey Hallbeck attended a

4

Hardee's business planning meeting held at the Chase Park Plaza in St. Louis, Missouri.  Stover Affidavit, ¶ 16.

Under the terms of the Renewal Agreement, Defendants were obligated to operate the Ottawa Location continuously until June 18, 2010.  However, in the late summer and early fall of 2008, Defendants made a series of telephone calls to Hardee's home office in St. Louis, Missouri indicating a desire to terminate the Renewal Agreement prematurely and to close the Ottawa Location.  Stover Affidavit, ¶ 17.  During these calls, Hardee's advised Defendants that Hardee's would not consent to the premature termination of the Renewal Agreement, and that Defendants' abandonment of their obligation to operate the restaurant would be treated as a breach of the Renewal Agreement.  Stover Affidavit, ¶ 18.  Nevertheless, on February 24, 2009, Defendant Jeffrey Hallbeck sent a letter from Wisconsin to Hardee's at its home office in St. Louis, Missouri, via fax and certified mail, giving notice to Hardee's that Defendants had unilaterally closed the Ottawa Location and ceased operations there as of February 22, 2009.  Stover Affidavit, ¶ 19; Exhibit 6.

As a result of Defendants' early termination of the Renewal Agreement, their premature cessation of operations at the Ottawa Location, and their abandonment of the franchise, Hardee's filed this action for breach of the Renewal Agreement, breach of the Personal Guarantee, and for declaratory and related injunctive relief.  In response, Defendants have moved to dismiss this action on the ground that venue is improper under 28 U.S.C. § 1391(a)(2) or, in the alternative, to transfer this action to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a).  In support of their Motion, Defendants assert that they intend to file a counterclaim against Hardee's based on decisions Hardee's made with respect to advertising and the operation of Hardee's company-owned restaurants.  All of the decisions about which Defendants say they

intend to complain were made by Hardee's executives in St. Louis, Missouri. Stover Affidavit, ¶ 20; Exhibit 7.

For the reasons set forth below, Defendants' Motion should be denied in its entirety.

## ARGUMENT

As alleged in Hardee's Complaint, the causes of action asserted against Defendants in this case arise out of Defendants' active transaction of business and the making of a contract in the Eastern District of Missouri. No Defendant has challenged the jurisdiction of this Court over their person, nor could they, as this Court has personal jurisdiction over them under the Missouri long-arm statute and federal minimum contacts analysis. See Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985). Defendants only assert that proper venue is lacking in this Court. The undisputed facts and law show otherwise.

### I.     Venue Is Proper In This District Under 28 U.S.C. § 1391(a)(2) On All Counts Of The Complaint

Notwithstanding Defendants' repeated assertions to the contrary, Hardee's does not rely upon Defendants' consent to venue in this Court to establish venue here. It is completely unnecessary to do so as venue is also proper here under 28 U.S.C. § 1391(a)(2) in that a substantial part of the events giving rise to this lawsuit occurred in this District, including the negotiation and execution of the contract being sued upon.

Hardee's could have relied upon Defendants' consent to venue in this Court for a number of reasons, including: (i) federal law, not state law, applies in determining whether a forum selection clause is valid and enforceable, and under federal law, such a clause is "a significant factor that figures centrally in the district court's calculus;"[2] (ii) the purpose of the Illinois Franchise Disclosure Act of 1987 (the "Illinois Act") is to protect Illinois residents, not out-of-

---

[2] Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Doe 1 v. AOL LLC, 552 F. 3d 1077 (9th Cir. 2009).

6

state Wisconsin residents such as Defendants;[3] and (iii) all but one of Defendants are being sued not only in their capacity as franchisees, but additionally in their capacity as personal guarantors, a status to which the Illinois Act does not apply. Again, however, Hardee's is not relying on Defendants' entry into a forum selection clause in this case, as venue is independently proper in this District as to all Defendants based on their conduct.[4]

Under 28 U.S.C. § 1391(a)(2), venue is proper in a diversity action in any judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred…." "Under this statute, the Court must determine whether this district has a substantial connection to the claim, not whether other forums may have greater contacts," as venue may be proper in more than one district. May Dept. Stores Co. v. Wilansky, 900 F. Supp. 1154, 1163 (E.D. Mo. 1995), citing Setco Enterprises Corp. v. Robbins, 19 F.3d 1278, 1281 (8th Cir. 1994). Defendants agree on page 11 of their Memorandum that this is the appropriate standard, citing Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558 (8th Cir. 2003).

---

[3] See Highway Equipment Co. v. Caterpillar, Inc., 908 F.2d 60, 63 (6th Cir. 1990), P&W Supply Co. v. E.I. Du Pont de Nemours & Co., 747 F. Supp. 1262, 1264 (N.D. Ill. 1990); Hengel, Inc. v. Hot' N Now, Inc., 825 F. Supp. 1311, 1316 (N.D. Ill. 1993); Franklin's Systems, Inc. v. Infanti, 883 F. Supp. 246, 250-51 (N.D. Ill. 1995). In this regard, Defendants state several times that the Illinois Franchise Disclosure Act required that Hardee's register with the state of Illinois in order to sell franchises in Illinois. See Defendants' Memorandum at 2-3, 7. That is true with respect to sales of franchises to people domiciled in Illinois, but it is not correct with respect to the sale of the Ottawa franchise to Defendants. Section 10 of the Act (cited, but not quoted, by Defendants at pp. 2-3 of their Memorandum) provides (emphasis added):

> No Franchisor may sell or offer to sell a franchise in the State *if* (1) the franchisee *is domiciled* in this State or (2) the offer of the franchise is made or accepted in this State *and* the franchise business is or will be located in this State, unless the franchisor has registered the franchise with the Administrator . . . .

Here, none of the Hallbecks was domiciled in Illinois when their Franchise and Renewal Agreements were entered into (nor are they now) and, while the franchise business was located in Illinois, neither the offer nor the acceptance of the franchise occurred there. In the end, like much of the rhetoric in Defendants' Memorandum, Defendants' invocation of the Illinois franchise registration requirement is both legally incorrect and irrelevant to this motion.

[4] Moreover, Defendants' admission in footnote 5 on page 15 of Defendants' Memorandum that venue in this matter would be proper in the Western District of Wisconsin belies Defendants' repeated suggestion that the Illinois Act vests exclusive venue for all disputes between the parties in Illinois. Clearly, it does not.

In analyzing contract claims under 28 U.S.C. § 1391(a)(2) to determine whether a substantial part of the events or omissions giving rise to a claim occurred in the district in which the case is filed, courts focus on (1) where the contract was negotiated or executed, (2) where the contract was to be performed, and (3) where the alleged breach occurred. 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3806.1 (2007).

The crux of Defendants' entire argument is their assertion (at 11) that the proper focus in determining venue is on the conduct of the defendant rather than the plaintiff. With respect to this case, that is an invitation to error. Woodke v. Dahm, 70 F. 3d 983 (8th Cir 1995), on which Defendants principally rely for their theory, was a trademark infringement case. Where the claim alleged is infringement, the only relevant conduct with respect to where the cause of action arose is where the infringement took place. In such a case, there is, by definition, no contract tying the claim back to the plaintiff's place of business. However, where the claim is breach of a franchise agreement, or any contract, the question of where the plaintiff entered into and performed the agreement, and where the defendant directed its communications to the plaintiff regarding the agreement, are a central part of the picture. Precisely this distinction was discussed in Burger King Corp. v. Thomas, 755 F. Supp 1026 (S.D. Fla. 1991), where Burger King sued two former franchisees for both breach of their franchise agreement and post-termination trademark infringement. There, the court found that the breach of contract claim predominated, and that venue was therefore proper in the plaintiff's home district. Id. at 1029-30. Here, there is no claim for trademark infringement; Hardee's only claims are for breach of the Renewal Agreement and the adjunctive Personal Guarantee. Thus, a focus on Hardee's conduct related to the claim is plainly appropriate when considering proper venue.

Several New York cases are illustrative on this issue. In <u>Schomann Int'l Corp. v. Northern Wireless, Ltd.</u>, 35 F. Supp.2d 205 (N.D.N.Y. 1999), the plaintiff corporation filed a breach of contract claim in the Northern District of New York, where it maintained its principal place of business, against an Iowa resident and an Iowa corporation with its principal place of business in Iowa. The subject matter of the contract was the installation of telecommunications equipment in yet a third location, the Republic of Georgia.

In its venue analysis, the court found (<u>id</u>. at 213):

> [T]he parties negotiated and executed the terms of the Agreement through telephone conversations and correspondence between their respective New York and Iowa offices, without [Defendant] physically entering New York. Accordingly, it is fair to say that the Agreement was negotiated and executed in both New York and Iowa.

The court observed that this course of conduct is "typical of many contractual arrangements today that no longer require face-to-face meetings to negotiate and execute a contract," and further noted that "the Defendants maintained regular communication with [Plaintiff] during the duration of the contract." <u>Id</u>. As a result, the court in <u>Schomann</u> held that venue was proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(a)(2).

<u>Gregory v. Pocono Grow Fertilizer Corp</u>., 35 F. Supp.2d 295 (W.D.N.Y. 1999), and <u>Kirkpatrick v. The Rays Group</u>, 71 F. Supp.2d 204 (W.D.N.Y. 1999), each present similar facts and an identical result. In <u>Gregory</u>, a contract was negotiated between a corporation located in New York and a corporation located in Pennsylvania. <u>Gregory</u> at 299. These communications occurred by telephone, fax, and correspondence. <u>Id</u>. The letter of intent at issue in that case was prepared and executed by the plaintiffs in New York, transmitted by mail to the defendants in Pennsylvania, then received back from the defendants by transmittal to New York. <u>Id</u>. None of the defendants ever traveled to New York in connection with the agreement.

When the New York plaintiff brought a declaratory judgment action regarding the validity of that agreement in the Western District of New York, the defendants moved to dismiss for improper venue. The court, however, held that venue was proper under 28 U.S.C. § 1391(a)(2), expressly stating that "the substantial activities standard may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action." Id. (quotations and citations omitted).

Similarly, in Kirkpatrick, venue was held to lie in the Western District of New York in a breach of contract case where the purchase order, three letters, and telephone calls were transmitted from the district by the plaintiff to the defendant's offices in California. Kirkpatrick at 213-14. As an additional factor, the court in Kirkpatrick noted that any harm to the plaintiff arising out of the defendant's breach of contract would be felt by the plaintiff at its principal place of business in the Western District of New York, and that "the place where the alleged harm occurred is also relevant for purposes of venue." Kirkpatrick at 212.

Here, Counts I and II of Hardee's Complaint respectively contain claims for breach of the Renewal Agreement and breach of the Personal Guarantee. Both agreements, by their terms, are to be "governed and construed in accordance with" Missouri law, except as the Illinois Act may apply. See Section 27.A. of the Renewal Agreement, the last paragraph of the Personal Guarantee which incorporates the same, and Section 3 of the Illinois Addendum.[5]

---

[5] Defendants point out that the Illinois Act states, with respect to franchises covered by the Act, that a provision of a franchise agreement that requires a franchisee "to waive compliance with any provision of the Act or any other law of Illinois is void." Hardee's does not claim that the Hallbecks waived "compliance" by Hardee's with the obligations or prohibitions of any Illinois statute that would otherwise be applicable. Indeed, the Illinois Franchise Disclosure Act expressly and specifically provides that when a franchisee does what the Hallbecks did here — "voluntarily abandons the franchise business" — that conduct constitutes "good cause" for immediate termination of the franchise. Illinois Act, Sec. 705/19(c)(2). However, both as a matter of conflicts law and by agreement, the Renewal Agreement between Hardee's and the Hallbecks and the Hallbecks' Personal Guarantee should be construed under Missouri law.

10

There was also extensive correspondence and communication between Defendants and Hardee's in connection with the negotiation and execution of the Renewal Agreement and the Personal Guarantee, and all of these communications either originated from, or were directed to, Hardee's home office in St. Louis. On Defendants' side, all communications either originated from, or were directed to, Wisconsin. In fact, none of these communications between the parties originated from or was sent to Illinois, the forum proposed by Defendants. The Renewal Agreement and the Personal Guarantee were executed and sent by Defendants, along with their renewal fees, to Hardee's home office in St. Louis. It was in St. Louis where Hardee's accepted the Renewal Agreement and the Personal Guarantee, executed the Renewal Agreement, and returned a fully executed original of the same to Defendants in Wisconsin. This is precisely the same activity that was held sufficient to constitute a substantial connection to the district for venue purposes in Schomann, Gregory, and Kirkpatrick.

In addition to the making of the contracts in Missouri, there was also on-going communication between Defendants and Hardee's home office in St. Louis regarding operational aspects of the Ottawa Location. Defendants' employees were trained by Hardee's in St. Louis. On at least one occasion, Defendant Jeffrey Hallbeck attended a meeting in St. Louis relating to his HARDEE'S® franchise. These contacts constitute an even stronger connection to this district than that held to be sufficient for venue purposes in Schomann, Gregory, and Kirkpatrick, where the defendant never traveled to the district in which the case was filed. In addition, Defendants, as franchisees, received substantial operational support emanating from Hardee's home office in St. Louis. Examples of that support included: (1) development of training guides and operations manuals; (2) development of new products; (3) creation of local store marketing materials; (4) negotiation and execution of vendor contracts for the benefit of franchisees such as

11

Defendants; (5) development and presentation of restaurant training courses; (6) strategic planning; and (7) development of construction materials and guides for improvements to HARDEE'S® restaurants such as the Ottawa Location. Stover Affidavit, ¶ 14.

Moreover, there was substantial communication between Defendants and Hardee's home office in St. Louis relating to Defendants' intention to prematurely close the Ottawa Location and their eventual decision to do so. Those telephone conversations culminated in a letter sent to Hardee's home office in St. Louis by Jeffrey Hallbeck from Wisconsin in which he announced Defendants' premature cessation of business at the Ottawa Location. This early termination and abandonment of the franchise by Defendants is precisely the conduct that forms the basis for each of Hardee's claims in this case. Moreover, the conduct by Hardee's that Defendants say led to their early termination of the Renewal Agreement (e.g., Hardee's requirements that Defendants install a new computer system and a drive-through timer and remodel the Ottawa restaurant) were decisions made by Hardee's at its home office in St. Louis. Clearly, there is a substantial connection between this District and the dispute at bar, and Defendants are not, as they suggest, being haled into a remote forum having no connection to the dispute.[6]

With respect to Count III of Hardee's Complaint, Defendants suggest that venue is improper in this District because Hardee's claims have an impact on real estate located in the Northern District of Illinois. This legal conclusion is incorrect. Count III of Hardee's complaint seeks a declaration regarding the enforceability of certain covenants contained in the Renewal Agreement, which was accepted in Missouri and is governed by Missouri law, and related injunctive relief. Those covenants impose temporary personal obligations on Defendants with

---

[6] Indeed, based on factors similar to those discussed above in a case involving the non-renewal by a Missouri franchisor of a franchise located (like the one here) in Illinois, the Missouri Court of Appeals in Armstrong Business Services, Inc. v. H&R Block, 96 S.W. 3d 867, 873 (Mo. App. W.D. 2002), applying Missouri conflict of law principles, found that Missouri had "the most significant relationship to the transaction."

12

respect to their disposition of the Ottawa Location. However, the only relief Hardee's seeks from this Court on Count III is an order directing that Defendants comply with those contractual obligations *personally*. As a result, and in conjunction with the facts and law set forth above, venue is also proper in this District on Count III of Hardee's Complaint.

Defendants nevertheless attempt to rely on the so-called "local action doctrine" to defeat venue in this District. The cases cited by Defendants, however, acknowledge that this doctrine is "a relic of English common law" that has been little-applied in this country and, where it has been applied, has been applied "with much doubt." Bigio v. Coca-Cola Co., 239 F.3d 440, 450 (2d Cir. 2001). In Bigio, Canadian residents sued for compensation from the purchaser of certain assets in Egypt from an arm of the Egyptian government based on that government's prior seizure of those assets from the plaintiffs because of their religion. Bigio at 444-45. The Second Circuit described the "local action doctrine" as requiring that a suit based on diversity jurisdiction "to recover damages for [a] defendant's alleged trespass upon, and unlawful use and occupation of, land in [a foreign country]…not be maintained in any jurisdiction except that in which the land was located." Id. at 450, quoting Pasos v. Pan American Airways, Inc., 229 F.2d 271 (2d Cir. 1956).

In Bigio, the Second Circuit refused to apply the doctrine where the plaintiffs made no explicit claim of trespass in their complaint and where "any such claim would logically follow from and depend on the non-local claim at the heart of the Bigios' complaint." Id. Here, Hardee's makes no claim of trespass or damage to its property, implicit or otherwise; its claims are only for breach of contract. In Count III, it merely seeks an order from this Court that Defendants, personally, abide by the post-termination obligations contained in the Renewal

13

Agreement with respect to any competitive use or disposition of the Ottawa Location for a limited period of time.[7]

Defendants' other cases on this issue are similarly either (1) plainly distinguishable on their facts and therefore unavailing, or (2) support Hardee's position that venue is proper in this District: Grayson v. Garratt, 90 S.W.2d 500, 503 (Ark. 1936)(action for cancellation of deed and quiet title was local); St. Louis Smelting & Refining Co. v. Hoban, 209 S.W.2d 119, 125 (Mo. 1948)(action to enjoin continuing trespass by holdover tenant was not local because title was not involved and case was primarily a contract dispute); Chateau Lafayette Apts., Inc. v. Meadow Brook National Bank, 416 F.2d 301 (5th Cir. 1969)(action to cancel or reform a mortgage was local); Rogers v. Clipper Cruise Lines, Inc., 650 F.Supp. 143, 146 (D.Colo. 1986)(suit to enforce a deed restriction on land located in the British Virgin Islands was local); Hayes v. Gulf Oil Corp., 821 F.2d 285, 288 (5th Cir. 1987)(action to determine interests in an oil and gas lease was local where governing law defines such an interest as real estate); State Dept. of Natural Resources v. Antioch University, 533 So.2d 869, 873 (Fla. App. 1988)(action to quiet title was *in rem* and therefore local); and Trust Company Bank v. U.S. Gypsum Co., 950 F.2d 1144, 1150 (5th Cir. 1992)(products liability action involving asbestos abatement of property in another state held not a local action).

Also completely undermining Defendants' "local action" argument is Defendants' assertion that the Western District of Wisconsin would be an appropriate venue for this lawsuit. Defendants' Memorandum at 15 n.5. In doing so, Defendants demonstrate that there is nothing particularly local about this dispute. Indeed, the "local action doctrine" is a complete red herring

---

[7] One clause of the covenants that Defendants agreed to requires that Defendants make the terms of the covenants a matter of public record. Any "local" aspect of doing so is simply incidental to the personal relief sought. See, e.g., St. Louis Smelting & Refining Co. v. Hoban, 357 Mo. 436, 444, 209 S.W. 2d 119, 124 (1948) (local action doctrine does not restrict exercise of in personam jurisdiction to award equity relief which only "incidentally affects" foreign land).

14

here. Obviously, the same reasons that would permit a district court in Wisconsin to grant the declaratory and injunctive relief requested by Hardee's in Count III of its Complaint permits this Court to grant that relief.

Finally, all of the decisions made by Hardee's regarding the operation and closure of its company-owned restaurants, as well as its decisions relating to the structuring of advertising markets and the contents of advertisements, were made at Hardee's home office in St. Louis. Stover Affidavit, ¶ 20. Similarly, Hardee's decisions regarding Defendants' need to remodel their restaurant and install a new computer system and drive-through timer were made in St. Louis. Id. Because these decisions purportedly formed the basis for Defendants' premature termination of the Renewal Agreement and abandonment of the franchise, and are said to be the basis for Defendants' threatened (but yet-to-be-filed) counterclaim, venue is eminently proper in this District.

## II.    Transfer To The Northern District of Illinois Is Not Appropriate Under 28 U.S.C. § 1404(a).

In the alternative, Defendants seek a transfer of this case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). Such a transfer is not appropriate here.

In considering whether to transfer venue pursuant to Section 1404(a), courts consider the three factors set forth in that section: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) whether the transfer would be in the interest of justice. May Dept. Stores Co. v. Wilansky, supra, 900 F. Supp. at 1165. "Convenience of the witnesses is a primary, if not the most important, factor" in this calculus. Id. However, courts "give great deference to a plaintiff's choice of forum." Anheuser-Busch, Inc. v. All Sports Arena Amusement, Inc., 244 F. Supp.2d 1015, 1022 (E.D. Mo. 2002). As a result, the Court "may not disturb a plaintiff's choice

15

of forum unless a balance of relative considerations tips *strongly* toward the defendant." Id. at 1166 (emphasis added). "Without more, it is not enough that the defendant would prefer another forum, nor is it enough merely to show that the claim arose elsewhere." 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3848 (2007).

Here, the balance of statutory factors does not tip towards the defendants at all, let alone strongly enough to defeat Hardee's choice of forum. Hardee's and all of its personnel who it anticipates calling as witnesses are located in St. Louis, Missouri, where it maintains its principal place of business. Stover Affidavit, ¶¶ 3, 21. Defendants are residents of Wisconsin, although they have indicated (Declaration of Jeffrey Hallbeck, ¶ 13) that at least some of the witnesses they intend to call reside in Illinois. Moreover, Defendants have removed all of their documents from the Ottawa Location to Wisconsin. Hallbeck Declaration, ¶ 16.

While a transfer of this action to the Northern District of Illinois may be more convenient for the two possible witnesses Defendants have identified residing near their former Ottawa restaurant,[8] it would be much less convenient for Hardee's numerous witnesses (whose testimony will be critical). Transfer is not appropriate where it would simply shift the inconvenience from one party to the other because no overall benefit would be gained. See, e.g., Anheuser-Busch, Inc., supra, at 1022, May Dept. Stores Co., supra, at 1166, Schomann Int'l Corp., supra, at 214; 15 Wright & Miller, Federal Practice and Procedure: Jurisdiction 3d § 3848,

---

[8] One of those witnesses, Kathy Burress, the Manager of the Ottawa Location (Hallbeck Declaration, ¶ 13), attended Hardee's "Star Academy" training program in St. Louis, Missouri in August 2004. Stover Affidavit, ¶ 2. There is no indication that her travel to St. Louis for that training entailed any substantial inconvenience, nor would her travel to St. Louis to testify in this case (assuming her deposition testimony were not considered adequate). The potential testimony of the second of those witnesses, Dorothy Dale, Ms. Burress' Assistant Manager at the Ottawa Location, appears largely duplicative of Ms. Burress' potential testimony. Hallbeck Declaration, ¶ 13.

16

supra. The location of some of Defendants' possible witnesses, therefore, is not sufficient to warrant transfer of this case.

Moreover, transfer to the Northern District of Illinois would be only marginally more convenient for Defendants themselves. All of Defendants reside in Hudson, Wisconsin, which is located just outside of St. Paul, Minnesota. While Hudson is over 500 miles from St. Louis, it is also nearly 400 miles from Chicago, Illinois (where the United States District Court for the Northern District of Illinois is located). The Northern District of Illinois, however, is much less convenient for Hardee's, which can act only through its agents based in St. Louis, Missouri. As a result, this factor does not strongly favor Defendants. Rather, transfer would add greatly to the inconvenience of Hardee's and would only marginally benefit Defendants.

In fact, Illinois has almost no connection to this dispute, other than the fact that the Ottawa restaurant was located in Illinois. That restaurant has since been abandoned by Defendants. No records remain there. All of the communication between Hardee's and Defendants concerning the negotiation and execution of the contracts at issue, as well as their breach, occurred in Wisconsin and Missouri. Both the Renewal Agreement and the Personal Guarantee are to be construed under Missouri law.

Finally, there is no reason why granting transfer here would best serve the interest of justice. Unlike May Dept. Stores, this Court has personal jurisdiction over all of Defendants, and there is no other action pending between the parties. Thus, there is no reason why transfer would promote judicial economy here. To the contrary, court statistics indicate that the dockets of this District are significantly less crowded than those of the Northern District of Illinois.[9] Hardee's

---

[9] Comparison of the Judicial Caseload Profile provided by the Clerk's Office of each district reveals that, at the end of 2007, the average time from filing to trial for civil cases was 29.7 months in the Northern District of Illinois, compared to 22.5 months in this District.

17

disputes that there are any "obstacles to a fair trial" in this District, as suggested by Defendants on page 17 of their Memorandum.

Accordingly, Defendants have not met their burden of establishing that the balance of relevant factors tips strongly in favor of transfer of this case to the Northern District of Illinois.

## **CONCLUSION**

For all of the foregoing reasons, venue is proper in this District, and Defendants' Motion to Dismiss or Transfer should be denied in its entirety.

        Respectfully submitted,

        THE STOLAR PARTNERSHIP LLP

        /s/ Michael A. Fisher
        Charles Alan Seigel #4324
        Michael A. Fisher, #3106
        Matthew J. Aplington, # 534499
        cas@stolarlaw.com
        maf@stolarlaw.com
        maplington@stolarlaw.com

911 Washington Avenue, 7th Floor
St. Louis, Missouri 63101
Tel.:  (314) 231-2800
Fax:  (314) 436-8400

Attorneys for Plaintiff Hardee's Food Systems, Inc.

**CERTIFICATE OF SERVICE**

 The undersigned certifies that on this 13th day of July, 2009 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

Gregory C. Mollett, Esq.
gcm@greensfelder.com
Gregory E. Anderson, Esq.
gea@greensfelder.com
Greensfelder, Hemker, & Gale, P.C.
10 South Broadway, Suite 2000
St. Louis, Missouri 63102
(314) 241-9090
(314) 345-4792 facsimile

L. Michael Hankes, Esq.
mh@hankeslaw.com
63 Commercial Wharf
Boston, Massachusetts 02110
(617) 723-1144
(617) 723-0304 facsimile

                /s/ Michael A. Fisher

09032527.doc