UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HARDEE'S FOOD SYSTEMS, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. C.A. No. 4:09 – cv – 00664 |
| JEFFREY T. HALLBECK, et al. | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TO TRANSFER VENUE**

Defendants Jeffrey T. Hallbeck, Dianne S. Hallbeck, Scott R. Hallbeck, Robin Hallbeck, Carolyn Hallbeck ("Defendants"), by and through their undersigned attorneys, hereby submit the following Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss or to Transfer Venue. For purposes of this reply, the reply for 28 U.S.C. § 1404 (a) is discussed first, with the discussion for 28 USC § 1391 (a) following.

**INTRODUCTION**

In its opposition to defendants' motion to dismiss or to transfer venue, plaintiff Hardee's Food Systems, Inc. (hereafter HFS) abandoned the terms of its own contractual forum selection clause and focused on the physical location of HFS in St. Louis as the primary justification for opposing defendants' motion to dismiss or transfer. The pre-contractual activities of the parties should not factor as heavily as the activities of the parties relating to performance, all of which center on the defendants' Ottawa Illinois store location and the State of Illinois. Plaintiff's recitation of generic activities it claims were undertaken in St. Louis by unidentified persons do not go to the heart of the dispute, particularly plaintiff's failure to advertise for defendants. Plaintiff failed to come forward with any evidence that it did any advertising for defendants during the subject renewal

term, thereby admitting one of the prior breaches that will be the subject of defendants' counterclaim, which is also centered in Illinois.

## FACTUAL BACKGROUND

I. **ADDITIONAL FACTS**

A. **Defendants' Witness List**

Since filing their motion, defendants have worked diligently to locate customers who would provide evidence on their counterclaims, specifically those relating to the advertising issues. Defendants have thus far identified 94 additional potential witnesses, all of whom are located in Ottawa, Illinois (Exhibit A to Hallbeck Reply Declaration). Plaintiff did not identify a single witness in their opposition papers.

B. **Plaintiff Fails to Dispute Defendants' Advertising Breach Claim**

In its papers, plaintiff asserts in very general terms, that it supported defendants during the renewal term by providing the following:

1. development of training guides and operations manuals;
2. development of new products;
3. creation of local store marketing materials[1];
4. negotiation and execution of vendor contracts for the benefit of franchisees such as Defendants;
5. development and presentation of restaurant training courses;
6. strategic planning; and
7. development of construction materials and guides for improvement to HARDEE'S® restaurants such as the Ottawa location.

The Hallbeck reply declaration disputes plaintiff's assertions. Some of plaintiff's assertions also fail on their face. Thus, claims that HFS trained Barbara Sullivan in 2003

---

[1] Plaintiff fails to identify what local store marketing materials it "created" for defendants during the renewal term.

2

and Kathy Burress in 2004 have nothing to do with the failure to support defendants after the franchise was renewed in 2005.

Having come forward with some attempt to demonstrate that it supported defendants, plaintiff HFS said nothing about its failure to advertise for defendants during the renewal term, nor could it, because plaintiff provided no advertising for defendants during the renewal term. Defendants view this failure to come forward as an admission by plaintiff that it stands in prior breach of defendants' franchise contract.

### C. Plaintiff Failed to Discuss Its Closure of Its Own Corporate Restaurant or Its Failure to Purchase Defendants' Restaurant

Likewise, plaintiff failed to discuss the closure of its Spring Valley, Illinois corporate owned Hardee's restaurant for "business reasons" (June 11, 2009 Hallbeck Declaration ¶ 6-7 (Doc. 20-2)). Not only did plaintiff leave defendants alone in a dying market, but plaintiff failed to exercise its option to purchase defendants' restaurant at the end of the term. Paragraph 20 of the defendants' franchise agreement states in relevant part that:

> 20.    OPTION TO PURCHASE
>
> A.    Upon the expiration or termination of this Agreement for any reason, HFS shall give written notice to Franchisee, within 30 days after the effective date of termination or expiration, if HFS intends to exercise its option to purchase from Franchisee some or all of the assets used in the Franchised Restaurant ("Assets"). As used in this Section 20, "Assets" shall mean and include, without limitation, leasehold improvements, equipment, vehicles, furnishings, fixtures, signs and inventory (non-perishable products, materials and supplies) used in the Franchised Restaurant, and the real estate fee simple or the lease or sublease for the Franchised Location. HFS shall have the unrestricted right to assign this option to purchase the Assets. HFS or its assignee shall be entitled to all customary representations and warranties that the Assets are free and clear (or, if not, accurate and complete disclosure) as to: (1) ownership, condition and title; (2) liens and encumbrances; (3) environmental and hazardous substances; and (4) validity of contracts and liabilities inuring to HFS or affecting the Assets, whether contingent or otherwise…

(Franchise Agreement ¶ 20, Exhibit A to Complaint)

**D.     Hardee's Has No Restaurants Anywhere in the Chicago Market Area**

Defendants' franchise agreement defines their market area as Chicago (Franchise Agreement, Appendix C, Exhibit A to Complaint, Document 1-3, at filed page 23 of 32; Hallbeck Reply Declaration ¶ 3). To the best knowledge, information and belief of defendants, Hardee's has no restaurants anywhere in the Chicago market area as defined in defendants' franchise agreement (Hallbeck Reply Declaration, ¶ 4).

**II.    LEGAL ARGUMENT**

**A.     The Large Majority of Potential Witnesses are Located in Illinois**

A primary consideration should be the convenience of the witnesses who will be called at any trial of the dispute. Defendants have identified two management level employees (Cathy Buress and Dorothy Dale) and 94 customers who might be called as witnesses. The Hallbeck reply declaration sets forth the anticipated testimony of the customers which defendants believe will focus on the unacceptable nature of the spillover advertising from other markets which will be one of the counterclaims. None of these potential witnesses would be subject to the subpoena power in St. Louis (Fed R. Civ. Pro. 45 (b) (2) (B).

Moreover, the costs to defendant to defend in St. Louis would be significant. The expenses of the witnesses alone would be a major undertaking for defendants in a proceeding taking place in St. Louis. HFS is a much larger corporate entity with a minimal number of unidentified witnesses (Hallbeck Reply Declaration ¶ 4).

The defendants are all located in Wisconsin, which is much closer to Northern Illinois than it is to St. Louis.[2] As noted in the Hallbeck reply declaration it is much easier for defendants to defend in Illinois than it would be to defend in St. Louis (Hallbeck Reply Declaration ¶ 4). Plaintiff did not identify a single witness, but made only a conclusory statement about them being in St. Louis.

**B.      The Parties Incorporated the Illinois Franchise Disclosure Act into the Franchise Agreement**

As noted in defendants' opening Memorandum, the parties executed an Illinois addendum as part of defendants' renewal contract and expressly incorporated the Illinois Franchise Disclosure Act (IFDA) into defendants' renewal contract. Paragraph 1 of that addendum, written by plaintiff, states:

> **1.**      The provisions of this Addendum form an integral part of, and are incorporated into this Franchise Agreement. This Addendum is being executed because: **(A)** the offer or sale of the franchise to Franchisee was made in the State of Illinois; **(B)** Franchisee is a resident of the State of Illinois; and/or **(C)** the Franchised Restaurant will be located or operated in the State of Illinois.

Plaintiff cites no case holding that the Illinois Act does not apply to a franchised business operating within the State of Illinois, particularly where the IFDA itself is incorporated into the franchise contract. In Highway Equipment Company v. Caterpillar, Inc., 908 F.2d 60 (6th Cir. 1990) cited by plaintiff in footnote 3, and In re Montgomery Ward Catalog Sales Litigation, 680 F.Supp. 182 (E.D. Pa. 1987) cited by the Highway Equipment case, the franchised business was located outside the State of Illinois. In both of those cases, Illinois law was incorporated into the agreement.

---

[2] In its brief, plaintiff notes that defendants incorrectly stated at page three of their memorandum that all of the defendants were located in Illinois. As noted in footnote 5 of defendants' memorandum, all of the defendants are residents of St. Croix County, Wisconsin.

5

Again, the IFDA was not only expressly incorporated into the renewal franchise agreement drafted by plaintiff,[3] but plaintiff's termination notice asserts in the third paragraph on the first page that Illinois law applied (Complaint Exhibit D):

> In accordance with Section 18 A. (1) of the Franchise agreement <u>and Illinois law</u>, based upon that abandonment, the Franchise Agreement is terminated as of February 28, 2009.

The Illinois statute incorporated into the franchise agreement provides that any venue clause requiring revenue for a legal dispute outside the state of Illinois is void. 815 ILCS § 705/4. Plaintiff attempts to skirt this important Illinois public policy by stating that it does not seek to enforce the venue clause in Paragraph 27 B of the franchise agreement. The policy behind 815 ILCS § 705/4 is that all legal disputes under the Illinois statute must be litigated in Illinois. Thus, plaintiff's statement that it does not seek to enforce the contractual venue clause, does not allow plaintiff to avoid the Illinois public policy prohibiting the litigation of disputes under the statute outside the state of Illinois. Plaintiff does not argue that its incorporation of the IFDA into the franchise agreement and its assertion in its termination notice that Illinois law applied to the dispute were mistakes.[4] As noted, HFS does argue however, that after registering its offering circular and franchise agreement with the State of Illinois, incorporating the IFDA into defendants' franchise agreement and asserting in its termination notice that Illinois law applies to the dispute, that that Illinois statute and Illinois law do not apply.

---

[3] In footnote 3 of its opposition, plaintiff cites section 10 of the IFDA which requires registration of the plaintiff's offering circular and franchise agreement with the State of Illinois, which plaintiff did. Plaintiff now claims that based on the statutory section dealing solely with registration, that after registering its franchise agreement and offering circular with the state of Illinois and incorporating the IFDA into defendants' franchise agreement, that the IFDA does not apply to defendants' franchised restaurant operating within the State of Illinois.

[4] Plaintiff also makes the incongruous argument that personal guarantees, which are part of the franchise agreement governed by Illinois law and which do not operate unless liability is established, should somehow be governed by Missouri law.

The interpretation of the Illinois statute and other principles of Illinois law are matters that could be better left to a Court sitting in Illinois and more familiar with Illinois law.

### C. The Subject Matter of the Dispute is Most Closely Connected to Illinois

Despite plaintiff's analysis of who did what, when and where, the complaint and the counterclaim that will follow, center on the operation of defendants' remaining Hardee's franchise in rural Illinois and its closure. The argument set forth by plaintiff in its opposition is more of a minimum contacts analysis than one founded on where the claims arose. Plaintiff's alleged claims purportedly arise from the failure of that restaurant to continue to operate in Ottawa, Illinois. Defendants' counterclaims, which arise from the same nucleus of operative fact, all center on plaintiff's abandonment of defendants' rural Illinois market, plaintiff's failure to advertise in that market and the reaction of defendants' customers to spillover of plaintiff's unacceptable advertising from other markets. Defendants have identified scores of potential Illinois witnesses. As noted, plaintiff has not identified a single witness, but only made conclusory statements about where its witnesses are located.

Moreover, plaintiff seeks to litigate in St. Louis, its rights to tie up a rural Illinois market in which it not only has no legitimate business interest, but which it has affirmatively abandoned. It is axiomatic that trademarks and trade names must be geographically relevant. Comidas Exquisitos, Inc. v. O'Malley & McGee's, Inc., 775 F.2d 260 (8th Cir. 1985) (Claim of trademark infringement failed where restaurants were local in nature and were geographically separated and where trademark owner lacked present intent to enter alleged infringer's market). Not only did plaintiff close its Spring

7

Valley, Illinois corporate restaurant as a "business decision," but it has no Hardee's restaurants in the Chicago market area as defined in defendants' franchise agreement (Hallbeck Reply Declaration, ¶ 4). One cannot protect from competition a market in which one has no presence.

Moreover, for plaintiff to argue that the cloud on the title to defendants' Illinois real property which plaintiff seeks to create amounts to an order against the individual defendants personally, is disingenuous. The real property in question is owned by Halcyon, Inc., a third party which plaintiff failed to join as a necessary party under Fed. R. Civ. P. 19. Moreover, plaintiff glossed over the local action rule in its opposition, describing it as a "relic." Nonetheless, plaintiff's action is inherently tied to the land in another state owned by a third party not joined in this action.[5] Plaintiff improperly seeks to have injunctive relief entered in this Court affecting real property in an Illinois market which it has affirmatively abandoned. If plaintiff had wanted to maintain its alleged market presence, it could have exercised its right to first refusal under paragraph 20 A of the renewal franchise agreement, which it failed to do within the thirty (30) days period specified in its franchise agreement. To now suggest that defendants might somehow be infringing upon plaintiff's trademarks strains credulity.[6]

---

[5] Plaintiff also criticized defendants for noting that under 28 USC § 1391 (a) (1) the action would properly be brought in Wisconsin where all defendants reside. Defendants merely noted what 28 USC § 1391 (a) (1) allows.

[6] Exhibit 7 to the Stover affidavit omitted the deidentification pictures that were attached to the March 31, 2009 letter. See Exhibit B to the June 11, 2009 Hallbeck declaration.

**D.     Plaintiff's Complaint is an Attempt to Force Defendants to Stay in Business in an Illinois Market Plaintiff Abandoned**

At the crux of this case is plaintiff's unlawful attempt to force defendants to stay in business in an Illinois market that plaintiff abandoned. Plaintiff's actions are unlawful on a number of levels:

1. Plaintiff is in prior breach of contract. Plaintiff admits that it did not advertise for defendants. Defendants also challenge the inflammatory nature of the television advertising run by plaintiff when it did spill over into defendants' rural Illinois market;

2. Plaintiff has no contract right to claim the prospective royalty and advertising fees upon which the suit is based. At no time has plaintiff identified upon which contractual provision its claim(s) for prospective fees are based. Not only does plaintiff unlawfully claim these future fees, but its claim for advertising fees is for something it never did during the renewal term;

3. Hardee's chose to terminate the franchise agreement. Without reviewing the issue of whether Hardee's retained a termination right following its prior breaches, the termination of the franchise agreement by Hardee's cut off any claim to prospective or future royalties and advertising fees;

4. Hardee's attempt to recover fees for no services is unenforceable as a violation of public policy;

5. Hardee's claims are too speculative to succeed. While there is no liquidated damages clause in defendants' franchise agreement, Hardee's is unlawfully attempting to penalize defendants with its unfounded prospective or future royalties and advertising claims because defendants' continued performance of the franchise agreement, (for which Hardee's was in prior breach), was rendered impossible and/or commercially frustrated;

6. Defendants' store was losing money during the final renewal period. As discussed above, not only were defendants losing money but the franchise agreement was to definitively end June 18, 2010. Hardee's had demanded that defendants inject more capital into the business before the end of 2009 for the following:

   a) Computer System — $15,000.00;

   b) Drive Through Timer — $4,000.00;

   c) Store Remodel — $150,000.00;

7. Hardee's itself not only eliminated any market presence in defendants' region when it closed its Spring Valley, Illinois corporate Hardee's restaurant, but affirmatively admitted that the Hardee's brand, marks and restaurant concept were no longer viable in defendants' mid-state, rural Illinois region. Hardee's closed the Spring Valley, Illinois store as a "business decision" but refused to allow defendants to make their own "business decision" in closing their Ottawa, Illinois store; and

8. Hardee's made no attempt to exercise, under paragraph 20 of the franchise agreement, its right to purchase the Ottawa Hardee's restaurant within 30 days of the February 27, 2009 termination letter.

Plaintiff's lawsuit has no legitimate legal basis and should be dismissed or transferred to the Northern District of Illinois for disposition under Illinois law.

## **CONCLUSION**

Based on the foregoing and in the event the Court denies Defendants' Motion to Dismiss, the Court should enter an order granting Defendants' Motion to Transfer and transferring the case to the United States District Court for the Northern District of Illinois, a proper forum.

WHEREFORE, Defendants pray that the Court grant the following relief:

A.   Dismiss the case as venue is not proper in this District;

    B.      In the alternative, transfer the case to the Northern District of Illinois; and

    C.      Grant such other and further relief as may be fair and just.

Dated: July 23, 2009

Respectfully submitted,
GREENSFELDER, HEMKER, & GALE, P.C.

By   /s/ Gregory C. Mollett
Gregory C. Mollett, 85999
gcm@greensfelder.com
Gregory E. Anderson, #537015
gea@greensfelder.com
10 South Broadway, Suite 2000
St. Louis, Missouri 63102
(314) 241-9090
(314) 345-4792 facsimile

and

L. Michael Hankes
mh@hankeslaw.com
63 Commercial Wharf
Boston, MA 02110
(617) 723-1144
(617) 723-0304 facsimile
*Admitted Pro Hac Vice*

**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following:

Charles A. Seigel, Esq.
cas@stolarlaw.com
Michael A. Fisher, Esq.
maf@stolarlaw.com
Matthew J. Aplington, Esq.
maplington@stolarlaw.com
911 Washington Avenue, 7th Floor
St. Louis, Missouri 63101

    /s/ Gregory C. Mollett

1145775v1