UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HARDEE'S FOOD SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 4:09-CV-664 CAS |
| v. | ) | |
| | ) | |
| JEFFREY T. HALLBECK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' Motion to Dismiss for Improper Venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1391(a). In the alternative, defendants request that this case be transferred to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). Plaintiff Hardee's Food Systems, Inc. opposes the motion, and defendants have filed a reply. For the following reasons, the Court will deny defendants' motion.

**Background**.

Plaintiff Hardee's Food Systems, Inc. ("Hardee's") is engaged in the business of operating and licensing others to operate quick service restaurants using the "HARDEE'S" service mark and Hardee's proprietary methods and procedures. This diversity case arises out of defendants' agreement to operate a Hardee's restaurant in Ottawa, Illinois pursuant to a Hardeee's Restaurant Renewal Franchise Agreement ("Renewal Agreement"). Additionally, four of the five defendants personally guaranteed the franchise's performance under the Renewal Agreement pursuant to a Guarantee and Assumption of Franchise's Obligations ("Personal Guarantee"). The claims asserted in the complaint arise out of defendants' alleged abandonment of their obligations under the

Renewal Agreement and the Personal Guarantee midway through the term of their Ottawa, Illinois franchise.

Hardee's home office and principal place of business are located in St. Louis, Missouri. Defendants are five Wisconsin residents. In early 2005, Hardee's and defendants began a series of communications regarding the expiration of defendants prior franchise agreement for the Ottawa, Illinois location, which was set to expire on June 18, 2005. On May 25, 2005, Hardee's sent a letter from its home office in St. Louis to all defendants in Hudson, Wisconsin advising them of their right to renew their franchise agreement and setting forth the terms upon which renewal would be based. In response, defendant Jeffrey Hallbeck faxed a letter to Hardee's in St. Louis advising it that defendants sought a five-year extension of their franchise agreement. Hardee's sent two more letters to defendants from St. Louis, enclosing the Renewal Agreement and the Personal Guarantee and instructing defendants to sign and return the documents along with the required renewal fee to Hardee's in St. Louis. Defendants signed the Renewal Agreement and the Personal Guarantee in Hudson, Wisconsin, and sent them with the renewal fee to Hardee's in St. Louis. Hardee's executed the Renewal Agreement in St. Louis and returned the fully-executed documents to defendants in Wisconsin.

Additionally, plaintiff provided operational support to the defendants and their Ottawa, Illinois store from Hardee's office in St. Louis, Missouri, including development of training guides, operations manuals, new products, training courses, and guides for improvements of the restaurant; creation of marketing materials; and negotiation of vendor contracts.

Under the Renewal Agreement, defendants were to operate the Ottawa store until June 2010. In the late summer and early fall of 2008, however, defendants made a series of telephone calls to

Hardee's in St. Louis indicating a desire to terminate the Renewal Agreement and close the Ottawa store. On February 24, 2009, defendant Jeffrey Hallbeck sent a letter from Wisconsin to Hardee's in St. Louis, giving notice that defendants had closed the Ottawa store as of February 22, 2009. As a result of the early termination of the Renewal Agreement, plaintiff filed this action for breach of the Renewal Agreement, breach of the Personal Guarantee, and for declaratory and injunctive relief.

Defendants move to dismiss this action on the ground that venue is improper under 28 U.S.C. § 1391(a)(2) or, alternatively, to transfer this action to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a).[1]  In support of the motion, defendants assert that they intend to file counterclaims against plaintiff based on plaintiff's advertising decisions and the operation of Hardee's company-owned restaurants. Specifically, defendants allege Hardee's did not deliver advertising and support, did not provide a viable brand, and did not maintain a market presence in defendants' region. Defendants also state that they received backlash from their customers resulting from controversial television ads run by Hardee's in other markets, which denigrated the Hardee's brand image in defendants' market. Defendants state that "[t]he defendants, their former restaurant, all of their witnesses, and their customers, who are also witnesses, are located in the State of Illinois."[2]  (Mem. at 3)

---

[1]In their opening memorandum, defendants argue that they should not be bound by the forum selection clause of the Renewal Agreement. Because plaintiff does not rely upon defendants' consent to venue in this Court under the forum selection clause, the Court will not address this argument.

[2]Elsewhere in their briefing, defendants state that they are all residents of Wisconsin.

**Discussion.**

      A.      Motion to Dismiss for Improper Venue

Under 28 U.S.C. §1391(a)(2) venue in a diversity case such as this is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." In deciding whether venue is proper under the statute, the only question is "whether the district the plaintiff chose ha[s] a substantial connection to the claim, whether or not other forums ha[ve] greater contacts." Nordyne, Inc. v. Flick Distrib., LLC, 2009 WL 1508778, *3 (E.D. Mo. May 28, 2009) (quoting Setco Enters. Corp. v. Robbins, 19 F.3d 1278, 1281 (8th Cir. 1994)). For venue determinations under § 1391(a)(2), the Court does not decide "which district among [the] potential forums is the 'best' venue." Id. To resolve the motion to dismiss then, this Court must analyze only whether this judicial district in Missouri has a substantial connection to the claims in the case, without considering either any connection between the Northern District of Illinois and the claims or any comparison of this judicial district's connection and the connection of the Northern District of Illinois to the claims. Id.

A substantial connection between the Eastern District of Missouri and the claims exists. The claims arise out of two agreements between the parties, the Renewal Agreement and Personal Guarantee, which were signed by plaintiff in Missouri. There was extensive correspondence and communication between plaintiff and defendants in connection with the negotiation and execution of the agreements, and all of these communications originated from, or were directed to, Hardee's home office in St. Louis. The agreements were executed and sent by defendants, along with their renewal fees, to Hardee's home office in St. Louis, and it was in St. Louis where Hardee's accepted the agreements, executed the Renewal Agreement, and returned a fully executed original of the same

to defendants in Wisconsin. This type of activity has been held sufficient to constitute a substantial connection to the district for venue purposes. See, e.g., Schomann Int'l Corp. v. Northern Wireless, Ltd., 35 F.Supp.2d 205 (N.D.N.Y. 1999) (finding venue proper in New York even if performance under contact to be performed outside New York where purchase orders, payment requests, and status reports were sent to New York, and where New York plaintiff maintained regular communication with Iowa defendant); Gregory v. Pocono Grow Fertilizer Corp., 35 F.Supp.2d 295 (W.D.N.Y. 1999) (finding venue proper in New York where plaintiff was located although the defendant's contact was limited to telephone conversations, facsimiles and other correspondence between the parties); Kirkpatrick v. The Rays Group, 71 F.Supp.2d 204 (W.D.N.Y. 1999) (finding venue proper in New York where bills sent to New York, letters sent to defendant from New York, and plaintiff called defendant from New York).

Additionally, defendants' proposed counterclaims relate to Hardee's decisions regarding the operation and closure of its company-owned restaurants, and decisions regarding the structuring and advertising markets and the contents of advertisements. All of these decisions were made at Hardee's office in St. Louis, presumably by executives located in St. Louis. Defendants also take issue with Hardee's decisions regarding defendants' need to remodel their restaurant and install a new computer system and drive-through timer. These decisions were made in St. Louis. In fact, it appears that all of Hardee's business decisions that form the basis for defendants' termination of the Renewal Agreement and abandonment of their franchise were made in St. Louis.

Defendants argue that the proper focus of the venue inquiry is on the conduct of the defendant rather than the plaintiff. Defendants cite Woodke v. Dahm, 70 F.3d 983 (8th Cir. 1995), in which the Eighth Circuit found the residence of plaintiff to be a improper venue in a trademark

infringement case, and stated courts should focus on the relevant activities of defendant. This Court recognizes that "one of the central purposes of statutory venue is to ensure that a defendant is not 'haled into a remote district having no real relationship to the dispute,'" but in this contract action, a substantial portion of the conduct giving rise to the claim occurred here. Unlike Woodke, plaintiff does not merely reside in this district—plaintiff negotiated and executed the contracts at issue here; plaintiff made business decisions underlying the dispute here; and defendants directed all their communications regarding the contracts and the breach here. Defendants are not being haled into a remote district with no real relationship to the dispute.

Finally, defendants contend venue is not proper as to Count III, in which plaintiff seeks to have defendants ordered to comply with their post-termination obligations of the Renewal Agreement. These obligations include that defendants not transfer their store location to any entity they have reason to believe will operate a similar restaurant at that location, to include this restriction in any assignment of property, and to "take the steps necessary to assure that the restriction becomes a matter of public record." (Compl. at ¶ 28). Plaintiff states it "merely seeks an order from this Court that defendants, *personally*, abide by the post-termination obligations contained in the Renewal Agreement." (Pl. Resp. at 13-14) (emphasis added).

Defendants urge dismissal for improper venue under the "local action doctrine." The doctrine, described by the Second Circuit as "ancient" and "a relic of English common law,"[3] holds that courts may not exercise jurisdiction over any "local" action involving real property unless the property at issue is located in the state in which the court is sitting. See Bigio v. Coca-Cola Co., 239

---

[3] At the time of the Bigio v. Coca-Cola Co. decision in 2000, the Second Circuit had last discussed the doctrine in 1956. See Bigio, 239 F.3d 440, 450 (2d Cir. 2000).

F.3d 440, 450 (2d Cir. 2000). Like the court found in <u>Bigio</u>, the action here is not an action for damages to real property. This is a contract action, one of the provisions of which "touches" upon land. As the Second Circuit found in <u>Bigio</u>, this "is no more limited by the local action doctrine that is any other action which, though touching upon land, is brought on the basis of a legal theory other than trespass." <u>See</u> also <u>St. Louis Smelting & Refining Co. v. Hoban</u>, 209 S.W.2d 119, 124 (Mo. 1948) (local action doctrine does not restrict exercise of in personam jurisdiction to award equity relief that only "incidentally affects" foreign land).[4]

On this basis, the Court finds venue is proper in the Eastern District of Missouri under § 1391(a)(2), and defendants' motion to dismiss on this ground should be denied.

> B. <u>Alternative Motion to Transfer this Action to the Northern District of Illinois Pursuant to 28 U.S.C. § 1404(a)</u>

Alternatively, defendants move to transfer this case to the Northern District of Illinois under 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a)

"The statutory language [of § 1404(a)] reveals three general categories of factors that courts *must* consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." <u>Terra Int'l Inc. v. Mississippi Chem. Corp.</u>, 119 F.3d 688, 691 (8th Cir. 1997) (emphasis added). A district court's evaluation of a motion to transfer is not limited, however, to these three factors. <u>Id.</u> at 696. A district court has the

---

[4] Moreover, as plaintiff points out, defendants undermine their argument by asserting that the Western District of Wisconsin would be an appropriate venue for this lawsuit. (Def. Mem. at 15 n.5).

discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).

In exercising its discretion, the Court is mindful of the well-established principle that the party seeking a transfer bears the burden of proving a transfer is warranted. Terra Int'l, Inc., 119 F.3d at 695 ("the party seeking a transfer under § 1404(a) typically bears the burden of proving that a transfer is warranted"). Courts generally give considerable deference to a plaintiff's choice of forum. Id. "'There is nothing . . . in the language or policy of § 1404(a) to justify its use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue. Van Dusen, 376 U.S. at 633-34. When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable, there is no basis for a change of venue; the tie is awarded to the plaintiff . . . .'" Trident Steel Corp. v. Oxbow Steel Int'l, LLC, 2009 WL 3242045, *4 (E.D. Mo. Oct. 5, 2009) (quoting In re Nat'l Presto Indus., Inc., 347 F.3d 662, 665 (7th Cir. 2003)).

      1.     Convenience of Witnesses.

The convenience of witnesses has been called "the most powerful factor governing the decision to transfer a case." JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE, § 111.13[1][f][i] (3d ed. 2009). The sheer number of witnesses is not determinative. Rather, the party seeking transfer should identify those necessary witnesses and indicate what their testimony at trial will be. See American Standard, Inc. v. Bendix Corp., 487 F. Supp. 254, 262 (W.D. Mo. 1980).

In support of their motion to transfer, defendants have submitted the declaration of defendant Jeffrey T. Hallbeck. Hallbeck states that the majority of witnesses defendants would call to defend plaintiff's claims and to prosecute defendants' anticipated counterclaims reside in Illinois. Hallbeck identifies two witnesses by name, the manager and assistant manager of the Ottawa, Illinois Hardee's store. In his reply affidavit, Mr. Hallbeck states that he met with members of the Ottawa, Illinois "Breakfast Club," and obtained a list of former Hardee's customers who have since become Burger King customers. Mr. Hallbeck attaches to his affidavit a list 94 individuals' names. He states that he spoke with several people on the list about Hardee's allegedly inappropriate advertising, part of defendants' anticipated counterclaim, and the customers complained about the nature of the advertising. Mr. Hallbeck states that others on the list would testify similarly. Hallbeck states that because of limited resources, "it is unlikely that we could produce these witnesses in St. Louis, Missouri." (Hallbeck Aff. at § 15; Hallbeck Reply Aff. at ¶ 4). As for party witnesses, defendants have not disputed that they all reside in Wisconsin.

Although plaintiff does not state the number of witnesses it would anticipate calling at trial, it states that all of its personnel who will be called as witnesses are located in St. Louis, Missouri.

The Court acknowledges that St. Louis is a less convenient forum for defendants' customer witnesses than the Northern District of Illinois. The testimony of these witnesses, however, is largely cumulative and relevant only to one aspect of defendants' anticipated counterclaim—the claim of inappropriate spillover advertising. Defendants do not need 94 individuals from Ottawa, Illinois to testify to this point. While the Court does not give undue weight to the fact that defendants have listed 94 non-party witnesses who will be inconvenienced, consideration of convenience of witnesses tips toward defendants.

### 2. Convenience of the Parties.

"The logical starting point for analyzing the convenience of the parties is a consideration of their residences in relation to the district chosen by the plaintiff and the proposed transferee district." JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE, § 111.13[e][i] (3d ed. 2009). All five defendants live in Hudson, Wisconsin, just outside of St. Paul, Minnesota. Plaintiff's home office and principal place of business are located in St. Louis, Missouri. While transfer to the Northern District of Illinois would be marginally more convenient for the defendants traveling from Wisconsin, it would be much more inconvenient for plaintiff, which resides in its chosen forum—the Eastern District of Missouri. Unlike the typical case in which the plaintiff resides in its chosen forum and the defendant resides in the proposed transferee district, here neither plaintiff nor defendants reside in the proposed transferee district.

To the extent location of documents should be considered with respect to the convenience of the parties, defendants admit that the restaurant in Ottawa, Illinois has been abandoned. No records remain there. (Hallbeck Aff. at ¶ 16). Presumably, all plaintiff's documents related to this case are kept where it negotiated and executed the contracts at issue—St. Louis, Missouri. Moreover, to the extent this factor also addresses the location of the challenged conduct (Maritz Inc. v. C/Base, Inc., 2007 WL 433378, at *9 n.3 (E.D. Mo. Feb. 6, 2007) (citing Terra Int'l, Inc., 119 F.3d at 696)), all the communication between plaintiff and defendants concerning the negotiation and execution of the contracts at issue occurred in Wisconsin and Missouri. While defendants are correct that their counterclaims involve actions taken by plaintiff that affected the viability of their store located in Ottawa, Illinois, all of the corporate decisions about which defendants complain were made by Hardee's executives in St. Louis, Missouri. (Resp. at 6).

The convenience of the parties factor does not support transfer of this lawsuit to the Northern District of Illinois.

   3.  <u>Interests of Justice.</u>

Included in the interests of justice factor are considerations of judicial economy, the plaintiff's choice of forum, the comparative costs to the parties in litigating in each forum, obstacles to a fair trial, and the advantages of having a local court determine questions of local law. <u>Terra Int'l, Inc.</u>, 119 F.3d at 696. Defendants contend each of these factors favors them. Defendants state "comparative costs of the parties of litigating in each forum . . . [is] similarly skewed in favor of the Illinois District in that these five [defendants] will incur substantial cost and expense in fighting a large corporation with a national presence that filed this action in its own backyard, which is located well over five hundred miles away from Defendants' homes." The Court is not swayed by this argument. As previously discussed, defendants are not seeking to have this case transferred to their home forum, but rather to the Northern District of Illinois, which presumably would hear this case in its Eastern Division, located in Chicago, Illinois. Defendants reside in Hudson, Wisconsin, which is approximately 382 miles from Chicago, Illinois. Defendants will incur substantial cost whether they litigate in Chicago or St. Louis, Missouri. Additionally, it is the right of every plaintiff to chose the forum in which it files suit.

Finally, this Court has personal jurisdiction over all defendants and no other action is pending between these parties. To the extent Illinois law might apply, this Court is accustomed to presiding over diversity actions in which the interpretation of state law other than Missouri is required. Court statistics supplied by plaintiff (and undisputed by defendants) show the docket of

this Court is slightly less congested than that of the Northern District of Illinois. The interests of justice do not favor transfer of this case to the Northern District of Illinois.

**Conclusion.**

Having considered the relevant factors under § 1404(a) and the weight to be given to plaintiff's choice of forum, the Court finds that defendants have not met their burden of proving a transfer is warranted. Defendants' motion to transfer the case to the Northern District of Illinois is denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss plaintiff's complaint or, in the alternative, to transfer venue is **DENIED**. [Doc. 13]

_/s/ Charles A. Shaw_
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  22nd  day of March, 2010.