**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HARDEE'S FOOD SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:09-cv-00664-CAS |
| | ) | |
| JEFFREY T. HALLBECK, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' FIRST AMENDED ANSWER, DEFENSES, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

NOW COME defendants Jeffrey T. Hallbeck, Dianne S. Hallbeck, Scott R. Hallbeck, Robin Hallbeck and Carolyn J. Hallbeck, hereafter collectively referred to as Hallbeck, by and through their undersigned attorneys, and for their first amended answer, defenses, affirmative defenses and first amended counterclaims in response to the Complaint filed by Hardee's Food Systems, Inc. ("HFS" or "Hardee's") respectfully plead the following:

## ANSWER

## PRELIMINARY STATEMENT

1.     Defendants neither admit nor deny paragraph 1 of the Complaint because paragraph 1 calls for the admission or denial of legal conclusions. To the extent that paragraph 1 requires an answer or otherwise constitutes factual allegations against defendants, such allegations are denied. Defendants further state that HFS is in prior willful and/or material breach of defendants' franchise agreement, failed to perform its obligations owed to defendants under their franchise agreements and committed other violations of applicable statutory and common law which damaged the defendants and for which plaintiff is responsible to defendants.

## THE PARTIES, JURISDICTION AND VENUE

2.      Defendants neither admit nor deny paragraph 2 of the Complaint because paragraph 2 calls for the admission or denial of legal conclusions. The defendants state affirmatively that plaintiff has failed to join Halcyon, Inc., a necessary party.

3.      Defendants admit the allegations of paragraph 3 of the Complaint.

4.      Defendants neither admit nor deny the allegations of paragraph 4 of the Complaint because paragraph 4 calls for the admission or denial of legal conclusions. To the extent that paragraph 4 requires an answer or otherwise constitutes factual allegations against defendants, such allegations are denied.

5.      Defendants neither admit nor deny the allegations of paragraph 5 of the Complaint because paragraph 5 calls for the admission or denial of legal conclusions. To the extent that paragraph 5 requires an answer or otherwise constitutes factual allegations against defendants, such allegations are denied.

6.      Defendants neither admit nor deny the allegations of paragraph 6 of the Complaint because paragraph 6 calls for the admission or denial of legal conclusions. To the extent that paragraph 6 requires an answer or otherwise constitutes factual allegations against defendants, such allegations are denied.

## THE RENEWAL FRANCHISE AGREEMENT

7.      Defendants admit that they executed documents and papers related to the renewal of a Hardee's franchised restaurant with an effective date of June 19, 2005. Defendants neither admit nor deny the allegations of paragraph 7 of the Complaint, because paragraph 7 calls for the admission or denial of legal conclusions. Defendants state affirmatively that plaintiff does not operate any Hardee's restaurants in defendants' local market and that plaintiff abandoned not only defendants' local market but the entire Chicago market area as defined by defendants' franchise agreement.

8.      Defendants admit that Exhibit A is attached to Plaintiff's Complaint.  Defendants admit that they executed documents and papers related to the renewal of a Hardee's franchised

restaurant with an effective date of June 19, 2005. Defendants neither admit nor deny the allegations of paragraph 8 of the Complaint, because paragraph 8 calls for the admission or denial of legal conclusions. With respect to the remaining allegations set forth in paragraph 8 of the Complaint, defendants state that the documents referred to constitute the best evidence of their terms and speak for themselves.

9.      Defendants admit that they executed documents and papers related to the renewal of a Hardee's franchised restaurant with an effective date of June 19, 2005.  Defendants further state that the referenced document speaks for itself and the interpretation of that document is a matter for the Court to decide.  By way of further response, Defendants state that the allegations of Paragraph 9 are legal conclusions to which no answer is required.  Defendants deny all allegations of Paragraph 9 that are inconsistent with or contrary to the terms of the referenced document.  Defendants neither admit nor deny the remaining allegations of Paragraph 9 of the Complaint, they call for the admission or denial of legal conclusions.

10.     Defendants state that the referenced document speaks for itself and the interpretation of that document is a matter for the Court to decide.  By way of further response, Defendants state that the allegations of Paragraph 10 are legal conclusions to which no answer is required.  Defendants deny all allegations of Paragraph 10 that are inconsistent with or contrary to the terms of the referenced document.  To the extent that paragraph 10 requires an answer or otherwise constitutes factual allegations against defendants, such allegations are denied.

## THE PERSONAL GUARANTEE

11.     Defendants admit that Exhibit B is attached to Plaintiff's Complaint.  Defendants further state that the referenced document speaks for itself and the interpretation of that document is a matter for the Court to decide.  By way of further response, Defendants state that the allegations of Paragraph 11 are legal conclusions to which no answer is required.  Defendants deny all allegations of Paragraph 11 that are inconsistent with or contrary to the terms of the referenced document. To the extent that paragraph 11 requires an answer or otherwise constitutes factual allegations against defendants, such allegations are denied.

**THE HALLBECKS' ABANDONMENT OF THEIR OBLIGATIONS
UNDER THE RENEWAL FRANCHISE AGREEMENT AND THE
<u>RESULTING TERMINATION OF THE RENEWAL FRANCHISE AGREEMENT</u>**

12.     Defendants admit that Exhibit C is attached to Plaintiff's Complaint.  Defendants admit that they were forced to close their Ottawa, Illinois Hardee's restaurant on or about February 22, 2009, and affirmatively state that the abandonment of defendants' market and the Chicago market as defined in defendants' franchise agreement by plaintiff as well as plaintiff's other prior breaches of contract, failures to perform and violations of law contributed to cause the closure of defendants' Hardee's restaurant and excused further performance by defendants. To the extent that the allegations of paragraph 12 call for the admission or denial of legal conclusions, defendants neither admit nor deny such allegations. With respect to the remaining allegations of paragraph 12 of the Complaint, defendants state that the documents referred to constitute the best evidence of their terms and speak for themselves. To the extent that paragraph 12 requires an answer or otherwise constitutes factual allegations against defendants, such allegations are denied.

13.     Defendants neither admit nor deny the allegations of paragraph 13 of the Complaint because paragraph 13 calls for the admission or denial of legal conclusions. To the extent that paragraph 13 requires an answer or otherwise constitutes factual allegations against defendants, such allegations are denied.

14.     Defendants admit that Exhibits D and E are attached to Plaintiff's Complaint. Defendants neither admit nor deny the allegations of paragraph 14 of the Complaint, because paragraph 14 calls for the admission or denial of legal conclusions. With respect to the remaining allegations set forth in paragraph 14 of the Complaint, defendants state that the documents referred to constitute the best evidence of their terms and speak for themselves. To the extent that paragraph 14 requires an answer or otherwise constitutes factual allegations against defendants, such allegations are denied.

**THE HALLBECKS' POST-TERMINATION OBLIGATIONS
UNDER THE RENEWAL FRANCHISE AGREEMENT
<u>REGARDING DISPOSITION OF THE FRANCHISED LOCATION</u>**

15.     Defendants state that the referenced document speaks for itself and the interpretation of that document is a matter for the Court to decide.  By way of further response, Defendants state that the allegations of Paragraph 15 are legal conclusions to which no answer is required.  Defendants deny all allegations of Paragraph 15 that are inconsistent with or contrary to the terms of the referenced document.  To the extent that paragraph 15 requires an answer or otherwise constitutes factual allegations against defendants, such allegations are denied.

<u>REMEDIES</u>

16.     Defendants neither admit nor deny the allegations of paragraph 16 of the Complaint, because paragraph 16 calls for the admission or denial of legal conclusions. With respect to the remaining allegations set forth in paragraph 16 of the Complaint, defendants state that the documents referred to constitute the best evidence of their terms and speak for themselves. To the extent that paragraph 16 requires an answer or otherwise constitutes factual allegations against defendants, such allegations are denied.

17.     Defendants state that the referenced document speaks for itself and the interpretation of that document is a matter for the Court to decide.  By way of further response, Defendants state that the allegations of Paragraph 17 are legal conclusions to which no answer is required.  Defendants deny all allegations of Paragraph 17 that are inconsistent with or contrary to the terms of the referenced document.  To the extent that paragraph 17 requires an answer or otherwise constitutes factual allegations against defendants, such allegations are denied.

18.     Defendants state that the referenced document speaks for itself and the interpretation of that document is a matter for the Court to decide.  By way of further response, Defendants state that the allegations of Paragraph 18 are legal conclusions to which no answer is required.  Defendants deny all allegations of Paragraph 18 that are inconsistent with or contrary

to the terms of the referenced document.  To the extent that paragraph 18 requires an answer or otherwise constitutes factual allegations against defendants, such allegations are denied.

## COUNT 1
### (For Damages for Breach of Contract)

19.     Defendants hereby incorporate their answers to Paragraphs 1 through 18, above, of Plaintiff's Complaint as if fully set forth herein.

20.     The allegations of paragraph 20 of the Complaint are denied.

21.     The allegations of paragraph 21 of the Complaint are denied.

22.     The allegations of paragraph 22 of the Complaint are denied.

## COUNT 2
### (For Damages for Breach of the Personal Guarantee)

23.     Defendants hereby incorporate their answers to Paragraphs 1 through 22, above, of Plaintiff's Complaint as if fully set forth herein.

24.     The allegations of paragraph 24 of the Complaint are denied.  By way of further response and to the extent Count II attempts to assert a claim against Diane Hallbeck, Defendants expressly deny that Diane Hallbeck has executed a personal guaranty – a fact that Plaintiff conceded in Paragraph 11 of its Complaint.

25.     The allegations of paragraph 25 of the Complaint are denied.  By way of further response and to the extent Count II attempts to assert a claim against Diane Hallbeck, Defendants expressly deny that Diane Hallbeck has executed a personal guaranty – a fact that Plaintiff conceded in Paragraph 11 of its Complaint.

26.     The allegations of paragraph 26 of the Complaint are denied.  By way of further response and to the extent Count II attempts to assert a claim against Diane Hallbeck, Defendants

expressly deny that Diane Hallbeck has executed a personal guaranty – a fact that Plaintiff conceded in Paragraph 11 of its Complaint.

## COUNT 3
### (For Declaratory Relief Regarding the Enforceability of the Hallbecks' Post-Termination Obligations under the Renewal Franchise Agreement, Pursuant to 28 U.S.C. § 2201 and for Permanent Injunctive Relief Pursuant to 28 U.S.C. § 2202)

27.     Defendants hereby incorporate their answers to Paragraphs 1 through 26, above, of Plaintiff's Complaint as if fully set forth herein.

28.     The allegations of paragraph 28 of the Complaint are denied.

29.     The allegations of paragraph 29 of the Complaint are denied.

30.     The allegations of paragraph 30 of the Complaint are denied.

31.     The allegations of paragraph 31 of the Complaint are denied.

32.     The allegations of paragraph 32 of the Complaint are denied.

33.     The allegations of paragraph 33 of the Complaint are denied.

34.     The allegations of paragraph 34 of the Complaint are denied.

35.     The allegations of paragraph 35 of the Complaint are denied.

## PRAYER FOR RELIEF

1.     The allegations of paragraph 1 of the Prayer for Relief are denied.

2.     The allegations of paragraph 2 of the Prayer for Relief are denied.

3.     The allegations of paragraph 3 of the Prayer for Relief are denied.

## DEFENSES AND AFFIRMATIVE DEFENSES

Further, answering HFS's Complaint, for their defenses and affirmative defenses, defendants respectfully state to the Court as follows:

### First Affirmative Defense
### (Failure to State a Claim)

1.     The Complaint fails to state a claim upon which relief can be granted.

## Second Affirmative Defense
### (Lack of Jurisdiction)

2.      The Court does not have jurisdiction over plaintiff's alleged claims under 28 USC §1332.

## Third Affirmative Defense
### (Prior Breach of Contract)

3.      The prior willful or material breach of contract and/or the covenant of good faith and fair dealing by HFS discharged any obligation on the part of defendants to further perform and bias HFS' alleged claims.

## Fourth Affirmative Defense
### (Estoppel)

4.      Plaintiff is equitably estopped by its prior conduct from recovery on its alleged claims.

## Fifth Affirmative Defense
### (No Enforceable Contract Rights)

5.      Plaintiff has no contractual right to recover the alleged fees claimed or to seek the injunctive relief requested.

## Sixth Affirmative Defense
### (Plaintiff's Claims are Barred by Its Termination of the Franchise Agreement)

6.      Plaintiff's termination of defendants' franchise agreement bars its claims.

## Seventh Affirmative Defense
### (Plaintiff's Claims are Barred by Public Policy)

7.      Plaintiff's claims are barred or otherwise unenforceable as violations of public policy.

## Eighth Affirmative Defense
### (Plaintiff's Claims are Too Speculative)

8.      Plaintiff's claims are too speculative to succeed or otherwise be legally enforceable.

**Ninth Affirmative Defense**
**(Abandonment)**

9.      Plaintiff's abandonment of defendants' local market and/or the Chicago market area as defined in defendants' franchise agreement bars plaintiff's alleged claims.

**Tenth Affirmative Defense**
**(Failure to Act / Laches)**

10.      Plaintiff's failure to act and/or exercise its alleged rights under defendants' franchise agreement bars its alleged claims.

**Eleventh Affirmative Defense**
**(Impossibility of Performance)**

11.      Plaintiff's prior conduct and other circumstances rendered defendants' further ability to perform impossible and discharged defendants from any further obligation to continue to perform.

**Twelfth Affirmative Defense**
**(Commercial Impracticality)**

12.      Plaintiff's prior conduct and other circumstances rendered defendants' further ability to perform commercially impracticable and discharged defendants from any further obligation to continue to perform.

**Thirteenth Affirmative Defense**
**(Failure to Maintain Market Presence)**

13.      Plaintiff's failure to maintain a market presence in defendants' local market and/or the Chicago market area as defined by defendants' franchise agreements bars its claims.

**Fourteenth Affirmative Defense**
**(Unclean Hands)**

14.      The doctrine of unclean hands bars plaintiff's alleged claims against defendants.

**Fifteenth Affirmative Defense**
**(Failure to Name a Necessary Party)**

15.     Plaintiff failed to name a necessary party, Halcyon, Inc., which owns the fee or real estate upon which former Hardee's restaurant in issue is located and the building, without which the Court cannot grant complete relief and whose interests could be made subject to impairment and/or inconsistent obligations.

WHEREFORE, having answered plaintiff's Complaint and stated its defenses and affirmative defenses to plaintiff's Complaint, defendants pray that the Court grant the following relief:

A.     Deny the relief requested by plaintiff in its Complaint in its entirety;

B.     Award to defendants their reasonable attorneys' fees, costs, expenses and disbursements which they have and will incur in the defense of this action and in the prosecution of their counterclaims;

C.     Award such other and further relief as may be fair and just; and

D.     Enter judgment in favor of defendants on the claims alleged in plaintiff's Complaint and on defendants' counterclaims set forth hereinunder.

## FIRST AMENDED COUNTERCLAIMS

### The Parties

1.     Defendants Jeffrey T. Hallbeck, Dianne S. Hallbeck, Scott R. Hallbeck, Robin Hallbeck and Carolyn J. Hallbeck are each citizens and residents of the State of Wisconsin.

2.     Plaintiff Hardee's Food Systems, Inc. ("HFS" or "Hardee's") is a North Carolina corporation with its principal place of business in the City of St. Louis, Missouri.

### Jurisdiction and Venue

3.     The Court has subject matter jurisdiction over defendants' counterclaims under 28 U.S.C. § 1332. Specifically, the defendants are all citizens of the State of Wisconsin and the plaintiff, Hardee's Food Systems, Inc. is a North Carolina Corporation with its principal place of business in St. Louis, Missouri. The amount in controversy for this counterclaim, exclusive of

10

interest and costs exceeds $75,000.00. The Court also has jurisdiction to award declaratory and further relief pursuant to 28 USC § § 2201 and 2202.

4.      The Court has declared venue to be proper in this district and defendants do not waive their objections and/or appellate rights to venue by filing their counterclaims.

**Allegations Common to All Counterclaims**

5.      The defendants first opened the Ottawa franchise as a Hardee's in the early 1970's. It has been at its present location since 1985. It was once defendants' most successful store and formerly had annual sales consistently in the $1.2 million range. Defendants formerly owned 21 Hardee's restaurant franchises. The other 20 stores were either closed or sold in the time period from 1995 – 2007. Defendants' information and belief is that in roughly the same time period, more than 1,100 Hardee's restaurants have closed or gone out of business.

6.      The fee or real estate upon which the defendants' former Hardee's restaurant was located and the building is owned by a third party, Halcyon, Inc.

7.      In 2005, the defendants renewed the Ottawa, Illinois franchise for a five year term. As part of the renewal discussions that took place, plaintiff was made aware of and acknowledged that:

a)      Defendants would be selling their La Salle, Illinois and Dixon, Illinois Hardee's franchised restaurants;

b)      Defendants would be closing their Kewanee, Illinois Hardee's franchised restaurant; and,

c)      The defendants' Ottawa, Illinois Hardee's franchised restaurant would be carrying the debt service from the defendants' former La Salle, Illinois and Dixon, Illinois and Kewanee, Illinois franchised restaurants.

8.      The defendants' five year renewal franchise agreement for the Ottawa, Illinois Hardee's restaurant had an effective date of June 19, 2005. It incorporated an Illinois Addendum which contained the following opening paragraph:

1.      The provisions of this Addendum form an integral part of and are incorporated into the Franchise Agreement. This Addendum is being executed because: (A) the offer or sale of the franchise to Franchisee was made in the State of Illinois; (B) Franchisee is a resident of the State of Illinois; and/or the Franchised Restaurant will be located or operated in the State of Illinois.

Exhibit A Complaint, Document 1-3, filed 4/29/09, page 31 of 32.

9.      The Illinois Addendum also modified paragraph 27A of the franchise agreement and substituted Illinois law for Missouri law, stating:

3.      The following sentence is added to the end of Section 27A:

Notwithstanding the foregoing, the Illinois Franchise Disclosure Act shall govern this agreement.

The Illinois Addendum expressly incorporated the terms of the Illinois Franchise Disclosure Act (hereafter IFDA) into defendants' renewal franchise agreement for the Ottawa, Illinois Hardee's restaurant.

10.      Defendants sold their LaSalle, Illinois Hardee's restaurant to Arby's in early 2006. Defendants also sold their Dixon, Illinois Hardee's restaurant in 2006. In 2006, defendants also closed their Kewanee, Illinois Hardee's restaurant. There was approximately two years left on the franchise agreement for the Kewanee restaurant when it closed.

<u>Hardee's Fails to Perform and Causes Harm to Defendants</u>

11.      When defendants renewed the Ottawa franchise, they expected Hardee's to deliver adequate advertising, maintain a market presence in their local market and/or the Chicago market area, provide a viable brand under defendants' renewal license agreement, provide support and otherwise perform as the franchisor. Instead, Hardee's failed to advertise adequately or at all in defendants' market. Any media spillover may have originated from the Peoria market, while defendants were most closely associated with the Chicago market, where there are no Hardee's. Exhibit C to the franchise agreement stated in relevant part:

The Franchised Restaurant is located in the following Designated Market Area:
Chicago

Exhibit A to Complaint; Document 1-3, filed 4/29/09, page 23 of 32.

12.     What defendants did receive was negative backlash from their customers resulting from controversial television ads run by Hardee's in other markets. Hardee's and its affiliates used advertising monies paid by defendants and other franchisees operating under the CKE umbrella to produce television spots for Carl's Jr. and Hardee's that denigrated the Hardee's brand image in defendants' market.

13.     These commercials included, amongst others, advertisements for Hardee's "Patty Melt Burger." This commercial featured a scantily clad young woman rolling around in a white background with a hamburger. The tag line is "Patty melts for you." The voiceover begins with the line: "Patty melts for you." As the model beckons the viewer with her finger, and moves from one suggestive pose to another, the following lines are read by a female viewer: "Ten: Shhh, kiss me on the lips. Nine: Run your fingers through my hair. Eight: Touch me. Hold it: No wait, let's go straight to number one." A male voice then reads: "The Patty Melt Thickburger, new at Hardee's."

14.     In "Flat Buns" aired for Hardee's affiliate Carl's Junior, a female teacher remarks: "It was once believed that the world was not round, but flat" as she walks towards the front of the classroom. As she approaches the chalkboard, two students comment on her posterior. Immediately thereafter, the classroom becomes dark and those two students begin rapping suggestively about "flat buns."  The lyrics to this commercial include phrases like "flatter makes a better rear; stand sideways, girl, you disappear," and "in anatomy class, you got a butt minus." During this "song," the teacher climbs up on to her desk and begins dancing in a lewd manner. As part of her "dance," the teacher slaps her posterior and thrusts her pelvis upward.

15.     Although those ads and other such ads did not air in defendants' market, the public became aware of them and defendants received repeated complaints from resident

customers in Ottawa's predominantly agricultural and union oriented community, about the unacceptable nature of these ads.

16.     Support from Hardee's during defendants' final renewal term was limited to two annual visits by the Hardee's representative assigned to the Ottawa store and audits done by Eco-Sure.

17.     Hardee's recognized the regional decline of the goodwill in the Hardee's brand and trademarks licensed to defendants when it closed its Spring Valley, Illinois corporate Hardee's restaurant in April 2008. The LaSalle, Illinois News Tribune reported in the April 22, 2008 issue that Hardee's corporate restaurant in Spring Valley, Illinois had closed without notice. Hardee's company spokesperson, Jenna Petroff, commented: "Our official response is, it's a business decision." Hardee's didn't consult with defendants prior to closing the Spring Valley store about the impact Hardee's business decision would have upon defendants' Ottawa restaurant, the sole remaining Hardee's restaurant in the Illinois Valley. Defendants did not bargain for the complete loss of Hardee's market presence when they renewed the franchise.

18.     Defendants suffered declining net profits and/or annual losses during their renewal term.  Not only were defendants losing money, but the franchise agreement was to definitively end June 18, 2010. Under the express terms of the franchise agreement, there was no possibility of further renewing the franchise. Hardee's had demanded that defendants inject more capital into the business before the end of 2009 for the following:

    a)  Computer System – $15,000.00;

    b)  Drive Through Timer – $4,000.00;

    c)  Store Remodel – $150,000.00.

19.     Hardee's not only failed to deliver to defendants a viable franchise concept and a reasonable opportunity to succeed, but affirmatively breached defendants' Ottawa, Illinois franchise agreement by:

a.  Failing to provide adequate advertising, or at all, to defendants in their local market or the Chicago market area.[1] At the same time, plaintiff charged defendant advertising fees for inadequate or no advertising;

b.  Removing any market presence for the Hardee's brand in defendants' local market and/or the Chicago market area by closing the Spring Valley, Illinois corporate Hardee's restaurant;

c.  During defendants' renewal license term, denigrating the brand and trademarks which it licensed to defendants;

d.  Failing to provide ongoing support during defendants' renewal term; and

e.  Otherwise failing to perform as the franchisor.

20.  Hardee's breaches and failures to perform constituted a repeated pattern of behavior throughout the renewal franchise term.

21.  Defendants did not bargain to become the last Hardee's outpost in their region of Illinois, which once boasted the presence of dozens and dozens of successful Hardee's restaurants. Not only were the nearest Hardee's franchised restaurants as far away as Peoria, Illinois (73 miles away) and the Quad Cities (100 miles away), but the nearest Hardee's corporate store was in St. Louis, Missouri (232 miles away).

22.  In an effort to amicably resolve this matter, defendants approached Hardee's in October 2008 regarding closing their Ottawa, Illinois Hardee's restaurant. Hardee's refused to permit defendants to close their sole remaining Hardee's restaurant, demanding that it remain open so that Hardee's could continue to collect its fees. Defendants could not continue to lose money and closed their restaurant on February 22, 2009. The restaurant was completely deidentified and all royalties and advertising fees were paid to the date of closure.

---

[1] While paragraph 5 of the franchise agreement does not provide for equal levels of advertising in all markets, it does not permit Hardee's to provide no advertising support in return for the substantial advertising fees paid by defendants.

23.     Defendants notified plaintiff by letter of the February 22, 2009 restaurant closure. Plaintiff immediately retaliated and issued a notice of default and termination under Illinois law by letter dated February 27, 2009. Plaintiff's February 27, 2009 letter also demanded $55,601.58 in prospective or future royalties and advertising fees and made other assertions.

24.     In its February 27, 2009 letter, plaintiff set the effective date for the termination of defendants' Hardee's franchise at February 28, 2009. Under paragraph 20A of defendants' Hardee's franchise agreement, plaintiff had 30 days from the date of termination to exercise its option to buy defendants' former Hardee's restaurant. Paragraph 20A states in relevant part:

**20.     OPTION TO PURCHASE**

**A.**     Upon the expiration or termination of this Agreement for any reason, HFS shall give written notice to Franchisee, within 30 days after the effective date of termination or expiration, if HFS intends to exercise its option to purchase from Franchisee some or all of the assets used in the Franchised Restaurant ("Assets"). As used in this Section 20, "Assets" shall mean and include, without limitation, leasehold improvements, equipment, vehicles, furnishings, fixtures, signs and inventory (non-perishable products, materials and supplies) used in the Franchised Restaurant, and the real estate fee simple or the lease or sublease for the Franchised Location…

Plaintiff did not exercise its option to buy defendants' unprofitable Hardee's franchised restaurant.

25.     By letter dated March 31, 2009, defendants responded to plaintiff's February 27, 2009 termination letter and disputed plaintiff's claims. (Exhibit A attached.) Defendants also advised plaintiff that if it brought suit that a substantial counterclaim would be asserted. The defendants' March 31, 2009 letter also attached photographic evidence of the complete deidentification of defendants' former Hardee's restaurant.

26.     Plaintiff not only filed suit and claimed $55,601.58 in damages including prospective or future advertising fees for no advertising but sought permanent injunctive relief based upon information and belief.

16

<u>Illinois Law Governs This Dispute</u>

27.     Under the Illinois Franchise Disclosure Act (hereafter IFDA), plaintiff was required to register with the state of Illinois and agreed to follow Illinois law and procedure in return for the privilege of selling its Hardee's franchises in the state of Illinois. The act specifically requires registration prior to the sale of any franchise. 815 ILCS § 705/10.

28.     In addition, the Act is to be "liberally construed to effect the purposes thereof." 815 ILCS § 705/43. The burden of proof is upon any person claiming that the Act does not apply. 815 ILCS § 705/42.

29.     As noted above in Counterclaim paragraphs 8 and 9, the parties expressly incorporated the IFDA and Illinois law into the franchise agreement.

30.     The IFDA mandates the application of Illinois law to this dispute stating in relevant part:

> A.     **§ 4. Jurisdiction and Venue.** Any provision in a franchise agreement that designates jurisdiction or venue in a forum outside of this State is void, provided that a franchise agreement may provide for arbitration in a forum outside of this State.

> B.     **§ 41. Waivers Void.** Any condition, stipulation, or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this Act <u>or any other law of this State is void</u>. This Section shall not prevent any person from entering into a settlement agreement or executing a general release regarding a potential or actual lawsuit filed under any of the provisions of this Act, nor shall it prevent the arbitration of any claim pursuant to the provisions of Title 9 of the United States Code.

(Emphasis added.)

31.     The franchise agreement contains clauses on choice of law and venue, upon which plaintiff based its filing in this Court, which violate the IFDA:

> **A.**     This Agreement and any claim or controversy arising out of, or relating to, rights and obligations of the parties under this Agreement and any other claim or controversy between the parties shall be governed by and construed in accordance with the laws of the State of Missouri without regard to conflicts of laws principles. Nothing in this Section is intended, or shall be deemed, to make any Missouri law regulating the offer or sale of franchises or the franchise

relationship applicable to this Agreement if such law would not otherwise be applicable.

**B.**     The parties agree that, to the extent any disputes cannot be resolved directly between them, Franchisee shall file any suit against HFS only in the federal or state court having jurisdiction where HFS' principle offices are located at the time suit is filed. HFS may file suit in the federal or state court located in the jurisdiction where its principal offices are located at the time suit is filed. HFS may file suit in the federal or state court located in the jurisdiction where its principal offices are located at the time suit is filed or in the jurisdiction where Franchisee resides or does business or where the Franchised Restaurant is or was located or where the claim arose. Franchisee consents to the personal jurisdiction of those courts over Franchisee and venue in those courts.

32.     In its termination letter dated February 27, 2009, plaintiff asserted that:

In accordance with Section 18.A(1) of the Franchise Agreement and Illinois law, based upon abandonment, the Franchise Agreement is terminated as of February 28, 2009.

33.     Illinois law applies to all aspects of the dispute among the parties.

## COUNT I
### (Breach of Contract and the Covenant of Good Faith and Fair Dealing)

34.     Plaintiffs reallege, as if fully restated herein, their allegations set forth in the paragraphs above.

35.     Hardee's breached its express and implied contracts with the plaintiffs by its pattern of repeated misconduct that included, but was not limited to:

　　a.     Failing to provide adequate advertising, or at all, to defendants in their local market or the Chicago market area. At the same time, plaintiff charged defendant advertising fees for inadequate or no advertising;

      b.     Removing any market presence for the Hardee's brand in defendants' local market or the Chicago market area by closing the Spring Valley, Illinois corporate Hardee's restaurant;

      c.     During defendants' renewal license term, denigrating the brand and trademarks which it licensed to defendants;

      d.     Failing to provide ongoing support during defendants' renewal term; and,

      e.     Otherwise failing to perform as the franchisor.

36.     As a result of said misconduct, Hardee's breached its express contractual obligations and the contractual obligations construed under the implied duty of good faith and fair dealing owed to the plaintiffs.  That implied duty meant that under the contract, Hardee's was obliged not to act in a manner that precluded defendants from obtaining the fruits of their contracts and agreements and to take reasonable steps to enable the defendants to obtain the benefit of their contracts and agreements and their reasonable expectations.

37.     As a direct and proximate result of plaintiff's breaches of contract, the defendants have suffered the following direct, indirect and consequential damages:

      a.     Lost out of pocket expenses;

      b.     Lost business opportunities;

      c.     Lost profits;

      d.     Lost or diminished value of the goodwill and capital value of their business;

      e.     Lost business reputation; and,

      f.     Loss of time and money, including the payment of court costs and attorneys' fees.

WHEREFORE, the defendants respectfully request that this Court enter judgment against the plaintiff ordering:

A.     An award of monetary damages against it in an amount equal to the plaintiffs' present and future losses, prejudgment and post-judgment interest, costs and reasonable attorneys' fees as permitted by contract and by law; and,

B.     Such other and further legal and equitable relief as the Court deems fair and just.

## COUNT II
### (Declaratory Judgment)

38.     Defendants reallege, as if fully set forth herein, their allegations set forth in paragraphs above:

39.     Currently there exists, and at all relevant times there existed, a certain statute codified at 28 U.S.C. § 2201, et seq. commonly known as the Declaratory Judgment Act.

40.     Pursuant to the Declaratory Judgment Act, federal courts are authorized to declare the rights of interested parties in a case of actual controversy.

41.     A third party, Halcyon, Inc. is the owner of the real estate and the building in which the defendants' former Ottawa, Illinois franchised restaurant operated prior to it closure in February 2009. Plaintiff seeks to enforce the following claims against the defendants:

a.     The collection of prospective or future royalty and advertising payments from defendants for the balance of the franchise term, which have no legal basis in fact, contract or at law;

b.     The enforcement of post term non-competition covenants and personal guarantees which have no basis in fact, contract or at law; and,

c.     The encumberment of real property owned by a third party not joined in this lawsuit.

42.     The restrictive covenant(s) contained in Section 17(C) of the defendants' Hardee's Renewal Franchise Agreement ("restrictive covenants") are unenforceable in that they constitute an unreasonable restraint of trade.

43.     The restrictive covenant(s) are unenforceable in that they constitute an unreasonable restraint on alienation.

44.     The restrictive covenant(s) are unenforceable because plaintiff is in prior breach of its obligations owed to defendants under the franchise agreement.

45.     The restrictive covenant(s) are unenforceable because plaintiff removed its presence from the relevant market and had none at the time it sent its termination letter.

46.     The restrictive covenant(s) are unenforceable because under all the facts and circumstances they are overly broad in scope, including but not limited to time and distance.

47.     The restrictive covenant(s) are unenforceable because plaintiff has no legitimate business interest to protect.

48.     The restrictive covenant(s) are unenforceable because Hardee's is attempting to prohibit solicitation or service of former customers which it abandoned.

49.     The restrictive covenant(s) are otherwise legally unenforceable in law and/or equity.

50.     Defendants deny the legal enforceability of plaintiff's claims. Bona fide justiciable controversies exist between the parties.

WHEREFORE, the defendants pray that the Court grant the following relief:

A.  Declare that plaintiff's claims for prospective or future royalties and advertising fees are legally unenforceable under all the facts and circumstances;

B.  Declare that plaintiff's post term non-competition covenants are legally unenforceable under all the facts and circumstances and deny plaintiff's request to encumber real property owned by Halcyon, Inc., a third party;

C.  Declare that plaintiff's personal guarantees are legally unenforceable under all the facts and circumstances;

D.  Dismiss plaintiff's Complaint with prejudice and enter judgment for defendants on all counts;

E.  Award such necessary or further relief pursuant to 28 USC § 2202 to enforce the declaration of defendants' rights;

F.  Award to defendants their reasonable attorneys' fees and costs; and,

G.  Grant such other and further relief as may be fair and just.

Dated:  April 2, 2010     Respectfully submitted,

         GREENSFELDER, HEMKER, & GALE, P.C.

       By   /s/ Gregory C. Mollett
         Gregory C. Mollett, 85999
         gcm@greensfelder.com
         Gregory E. Anderson, #537015
         gea@greensfelder.com
         10 South Broadway, Suite 2000
         St. Louis, Missouri 63102
         (314) 241-9090
         (314) 345-4792 facsimile

         and

         L. Michael Hankes
         mh@hankeslaw.com
         63 Commercial Wharf
         Boston, MA 02110
         (617) 723-1144
         (617) 723-0304 facsimile

         **Attorneys for Defendants**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 2, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following:

Charles A. Seigel, Esq.
cas@stolarlaw.com
Michael A. Fisher, Esq.
maf@stolarlaw.com
Matthew J. Aplington, Esq.
maplington@stolarlaw.com
911 Washington Avenue, 7th Floor
St. Louis, Missouri 63101

/s/ Gregory C. Mollett

1197207