UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HARDEE'S FOOD SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:09CV00664 AGF |
| | ) | |
| JEFFREY T. HALLBECK, DIANNE S. HALLBECK, SCOTT R. HALLBECK, ROBIN HALLBECK, and CAROLYN J. HALLBECK, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This diversity matter is before the Court on Plaintiff Hardee's Food Systems, Inc.'s ("Hardee's") motion to re-set this case for a non-jury trial.  For the reasons set forth below, the motion shall be granted.

## BACKGROUND

Hardee's, a North Carolina corporation with its principal place of business in St. Louis, Missouri, operates and licenses others to operate quick-service Hardee's restaurants.  On June 19, 2005, Hardee's and Defendants ("the Hallbecks") entered into a written agreement entitled "Hardee's Restaurant Renewal Franchise Agreement," together with two written addenda entitled "Renewal Addendum to Hardee's Restaurant Franchise Agreement" and "Addendum to the Hardee's Restaurant Franchise Agreement Required for Illinois Franchisees" (collectively referred to as the "Franchise Agreement").  In the

Franchise Agreement, Hardee's granted the Hallbecks the continued right to operate a Hardee's restaurant located in Ottawa, Illinois, for a period of five years, commencing on June 19, 2005, and expiring on June 18, 2010.  Section 29.A of the Franchise Agreement stated that the Hallbecks had been "thoroughly advised with regard to the terms and conditions of [the Franchise] Agreement by legal counsel or other advisors of [the Hallbecks'] choosing" in connection with its execution.

Concurrently with the execution of the Franchise Agreement, each of the Hallbecks, except for Defendant Diane Hallbeck, executed a "Guarantee and Assumption of Franchisee's Obligations," in which they each personally and unconditionally guaranteed all of the obligations under the Franchise Agreement, and further agreed to be personally liable for the breach thereof ("Personal Guarantee").  Section 27.D of the Franchise Agreement states, in the last sentence of that paragraph, "Franchisee and [Hardee's] waive, to the fullest extent permitted by law, the right to bring, or be a class member in, any class action suits and the right to trial by jury."

Section 29.M states, in bold type on the signature page and set off in a paragraph of its own, that "[i]n the event of a dispute between [Hardee's] and Franchisee, the parties have waived their right to a jury trial."  Additionally, the Personal Guarantee states, in the last sentence of the relevant paragraph, "each of the undersigned waives . . . (h) any and all right to have any legal action under this Guarantee decided by a jury."  The font size of these three jury-waiver provisions is identical to the font size of the surrounding text of the respective documents.

On April 29, 2009, Hardee's initiated this action against the Hallbecks in federal court for damages under the Franchise Agreement and Personal Guarantee, and for a declaratory judgment and a permanent injunction declaring and enforcing aspects of the Hallbecks' post-termination obligations under the Franchise Agreement. In its complaint, Hardee's alleges that on February 22, 2009, the Hallbecks, without Hardee's consent, ceased operation of the Hardee's restaurant in question.

On March 26, 2010, the Hallbecks filed an answer and counterclaims to Hardee's complaint, stating that Hardee's was in prior willful and/or material breach of the Franchise Agreement. In their counterclaims, the Hallbecks stated that they first opened the Ottawa franchise as a Hardee's in the early 1970's, and that they formerly owned 21 Hardee's franchises.

On April 8, 2010, the Court issued a Case Management Order ("CMO") that erroneously set this case for trial by jury on May 2, 2011, despite the fact that neither party had requested a jury trial. The CMO further stated that it would "be modified only by leave of Court upon a showing of exceptional circumstances."

## ARGUMENTS OF THE PARTIES

On May 28, 2010, Hardee's filed its motion to re-set this case for a non-jury trial, on the ground that no party has demanded a jury trial and that the Hallbecks have contractually waived their right to a jury trial. On June 11, 2010, the Hallbecks filed their memorandum in opposition to Plaintiff's motion, stating, "To the extent it may be necessary, defendants hereby demand trial by jury." They assert that the right of trial by

jury is a fundamental right under the Constitution of the United States and the State of Illinois. They argue that the contractual jury-trial waiver is unenforceable and in support of this contention, state that none of the provisions in which they waived their right to a jury trial were negotiated. They further argue that Hardee's motion is untimely as it seeks a change in the Court's CMO more than ten days after the CMO was issued.

Hardee's, in reply, argues that its motion was not untimely, and that jury trial waivers are enforceable under federal law. In support of its contention that the jury trial waiver at issue is enforceable, it submitted the affidavit of Romondous Stover, Assistant General Counsel of Hardee's, who attested that "[t]he Defendants in this action are sophisticated business people who have been multi-unit franchisees of Hardee's since the 1970's. During that time, they have entered into dozens of franchise agreements with Hardee's similar to the one at issue in this case." Stover further stated that "none of the Defendants asked to negotiate or attempted to negotiate any of the provisions of either of those agreements." (Doc. #56, Ex. 2).

## DISCUSSION

Timeliness

A modification to a CMO is proper when the movant has demonstrated good cause and received the judge's consent. Fed. R. Civ. P. 16(b)(4). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." Rahn v. Hawkins, 464 F.3d 813, 822 (8th Cir. 2006). There is no time limit, either in the Federal Rules of Civil Procedure, or in this Court's CMO, for seeking a modification.

The Hallbecks rely on the Local Rules for the District of Nebraska as well as the Federal Rules of Appellate Procedure for the proposition that a ten-day time period applies to motions for modification of a CMO. The Court finds that the Hallbecks' reliance on these authorities is misplaced, and the Court rejects the Hallbecks' assertion of untimeliness.

Waiver of the Right to a Jury Trial

The right to a jury trial in a civil case is a fundamental right but is not absolute. Ind. Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co., 195 F.3d 368, 374 (8th Cir. 1999). "[B]ecause the right to a jury trial is fundamental, 'courts must indulge every reasonable presumption against waiver.'" Burns v. Lawther, 53 F.3d 1237, 1240 (11th Cir. 1995) (citing LaMarca v. Turner, 995 F.2d 1526, 1544 (11th Cir.1993)). A party may waive its right to a jury trial by contract. Popular Leasing USA, Inc. v. Turner Constr. Co., No. 4:05-CV-248 (CEJ), 2005 WL 2874741, at *1 (E.D. Mo. Oct. 31, 2005); NW Airlines Inc. v. Air Line Pilots Ass'n, 373 F.2d 136, 142 (8th Cir. 1967). A party's waiver must be "knowing and voluntary." Popular Leasing USA, Inc., 2005 WL 2874741, at *1. The burden of demonstrating that a jury waiver is knowing and voluntary rests with the party seeking its enforcement. Id. at *2.

The determination of whether a waiver is knowing and voluntary is a factual one, based primarily on four factors: (1) the relative bargaining power of the parties; (2) the sophistication of the parties; (3) the negotiability of the contract terms; and (4) the conspicuousness of the waiver provision. Id. at *1; Coop. Fin. Ass'n Inc. v. Garst, 871

F.Supp. 1168, 1171-72 (N.D. Iowa 1995).

The Hallbecks argue that there is an inherent disparity of bargaining power between franchisors and franchisees. However, the circumstances surrounding the execution of the Franchise Agreement at issue demonstrate that any disparity in bargaining power was not significant. The Franchise Agreement was a renewal of a prior franchise agreement between Hardee's and the Hallbecks, the Hallbecks had been franchisees of Hardee's since the 1970's, and formerly owned 21 Hardee's franchises.

For the same reasons, it is unreasonable for the Hallbecks to claim that they are unskilled business people. Specialized knowledge or sophistication is not required to comprehend a jury waiver provision. Popular Leasing USA, Inc., 2005 WL 2874741, at *2. Additionally, the Hallbecks were represented by counsel or other advisors in executing this transaction. See Conn. Nat'l Bank v. Smith, 826 F. Supp. 57 (D.R.I. 1993) (stating that the defendants' representation by counsel lent support to the conclusion that they knowingly, voluntarily, and intentionally consented to the jury-waiver provision in a contract, and that the waiver was therefore enforceable).

And, although the parties are in agreement that the jury trial waiver provisions were not specifically negotiated, the Hallbecks do not state that they ever asked to negotiate any of the provisions, nor do they articulate that they were "rushed or otherwise pressured into signing the contract." See Popular Leasing USA, Inc., 2005 WL 2874741, at *2 (noting that an absence of extended negotiations does not indicate any unfairness); Garst, 871 F. Supp. at 1172 (stating that the absence of any suggestion that the defendant

could not have negotiated the terms of the contract lent support to the enforceability of the waiver).  Further, under Missouri law, a party who signs a contract is presumed to have knowledge of its contents.  Dorsch v. Family Med., Inc., 159 S.W.3d 424, 436 (Mo. App. 2005).

Lastly, the jury waiver provision appears twice in the Franchise Agreement, once in bold type, and again in the two-page Guarantee in the last sentence of a paragraph.  As noted above, the font size of the jury waiver provisions is identical to the font size of the surrounding text of the respective documents, and the provisions are not hidden in the middle of paragraphs.  See Popular Leasing USA, Inc., 2005 WL 2874741, at *2; Telum, Inc. v. E.F. Hutton Credit Corp., 859 F.2d. 835, 837 (10th Cir. 1988).  Therefore, the Hallbecks cannot successfully argue that the jury-waiver provisions are invalid.

## CONCLUSION

In light of the Court's finding that contractual waivers of jury trials are valid under federal law, and that Hardee's met its burden of proving that the contractual waiver at issue was made knowingly and voluntarily, the Court finds that Hardee's has demonstrated good cause to modify the CMO in this case.

**IT IS HEREBY ORDERED** that Plaintiff's motion to re-set this case for a non-jury trial is **GRANTED**.  [Doc. #46]

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of October, 2010.