UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HARDEE'S FOOD SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff / Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | No. 4:09CV00664 AGF |
| | ) | |
| JEFFREY T. HALLBECK, DIANNE HALLBECK, SCOTT HALLBECK, ROBIN HALLBECK, and CAROLYN HALLBECK, | ) ) ) | |
| | ) | |
| Defendants / Counterclaim Plaintiffs. | ) | |

## MEMORANDUM AND ORDER

This diversity case arises out of the closing of a Hardee's franchise in Ottawa, Illinois, approximately one and one-half years before the end of a Renewal Franchise Agreement ("RFA") between the parties, Hardee's Food Systems, Inc. ("HFS") and five individuals collectively referred to herein as the Hallbecks. In response to HFS's claims for damages, the Hallbecks filed an amended counterclaim. Currently before the Court is the motion of HFS to dismiss the amended counterclaim for failure to state a claim upon which relief may be granted. For the reasons set forth below, this motion shall be denied in part and granted in part.

## BACKGROUND

HFS, a company whose principle place of business is in Missouri, is engaged in the business of operating and licensing others to operate quick-service restaurants using

the "Hardee's" service mark and proprietary methods and procedures developed by HFS. HFS entered into a five-year Renewal Franchise Agreement ("RFA") with the Hallbecks, residents of Wisconsin, pursuant to which the Hallbecks, as franchisees, were to continue to operate the Hardee's restaurant in Ottawa, Illinois, until June 19, 2010. Contemporaneous with the RFA, the parties signed a "Renewal Addendum," and an Addendum "Required for Illinois Franchises."

The opening "Recitals" section in the RFA state that HFS "has developed and owns a unique and distinctive system ("System") relating to the development, establishment and operation of fast food restaurants" and "continues to develop, use and control the use of [certain] Proprietary Marks in order to identify for the public the source of services and products marketed under the Proprietary Marks and the System, and to represent the System's high standards of quality, appearance and service."

The Hallbecks' obligations set forth in the RFA included the payment to HFS of royalty fees and advertising fees, based on a percentage of the restaurant's gross sales. HFS's obligations included maintaining the Hardee's National Advertising Fund ("HNAF"), which, according to the RFA, was designed for the creation and development of advertising, marketing, and related activities, and was established and maintained by means of advertising fees collected from franchisees. Section 5.B of the RFA provided, in relevant part, as follows:

**Hardee's National Advertising Fund**

> HFS has established, and will maintain and administer the HNAF for the creation and development of advertising, marketing and public relations, research and related programs, activities and materials that HFS, in its sole discretion, deems appropriate. Franchisee shall contribute to HNAF the amount set forth in [the RFA].
>
> * * *
>
> HFS or its designee shall direct all advertising, marketing, and public relations programs and activities financed by HNAF, with sole discretion over the creative concepts, materials and endorsements used in those programs and activities, and the geographic, market and media placement and allocation of advertising and marketing materials.
>
> * * *
>
> **Franchisee understands and acknowledges that HNAF is intended to enhance recognition of the Proprietary Marks and patronage of Hardee's Restaurants. HFS will endeavor to utilize HNAF to develop advertising and marketing materials and programs, and to place advertising that will benefit the System and all Hardee's Restaurants contributing to HNAF. However, Franchisee agrees that HFS is not liable to Franchisee and Franchisee forever covenants not to sue and holds HFS harmless of any liability or obligation to ensure that expenditures by HNAF in or affecting any geographic area (including the Franchised Location) are proportionate or equivalent to the contributions to HNAF by Hardee's Restaurants operating in that geographic area, or that any Hardee's Restaurant will benefit directly or in proportion to its contribution to HNAF from the development of advertising and marketing materials or the placement of advertising. Except as expressly provided in this Section 5, neither HFS nor its designee assumes any direct or indirect liability to Franchisee with respect to the maintenance, direction or administration of HNAF.**

Section 17 of the RFA included a covenant that for a period of two years following termination of the RFA, the Hallbecks would not in any way transfer the "Franchised Location" to anyone who intended to operate a restaurant there. The RFA further provided that the prevailing party in any judicial proceedings to enforce the RFA would

be entitled to expenses and attorney's fees. The RFA stated that any claims between the parties would be governed by Missouri law; the Illinois Addendum stated that notwithstanding the foregoing, the Illinois Franchise Disclosure Act would govern the RFA. In addition to the RFA and addenda, all the Hallbecks, except Diane Hallbeck, signed a personal guarantee guaranteeing their performance under the RFA.

The record establishes that the Hallbecks first opened the Ottawa franchise as a Hardee's restaurant in the early 1970's, and formerly owned 21 Hardee's restaurant franchises. The Hallbecks allege that at some point during the renewal franchise term, prior to February 2009, HFS aired lewd TV commercials, which, the Hallbecks allege, resulted in repeated complaints from the Ottawa Hardee's customers. In April 2008, HFS closed its Hardee's restaurant in Spring Valley, Illinois, leaving the Hallbecks' Ottawa restaurant as the last remaining Hardee's in its market area (Chicago, Illinois). The Hallbecks further allege that "[s]upport from [HFS] during [D]efendants' final renewal term was limited to two annual visits by the [HFS] representative assigned to the Ottawa store and audits done by EcoSure."

According to the Hallbecks, the Ottawa Hardee's began sustaining "declining net profits and/or annual losses." Although the RFA provided for operation of the Ottawa franchise until June 19, 2011, the Hallbecks closed the restaurant on February 22, 2009. On February 27, 2009, HFS sent the Hallbecks a Notice of Default and Termination, stating, "In accordance with the RFA and Illinois law, based upon [your abandonment of the franchised business] the [RFA] is terminated as of February 28, 2009."

In Count I of its Amended Complaint, HFS seeks damages resulting from the early termination by the Hallbecks of the RFA, in the form of the fees HFS would have been paid during the remaining term of the RFA. In Count II, HFS seeks the same damages from four of the Hallbecks (all but Diane Hallbeck) for breach of their personal guarantees. In both of these counts, HFS also seeks attorney's fees, pursuant to the RFA.[1] Attached to the amended complaint are copies of the RFA, the addenda, and the guarantee.

The Hallbecks filed an answer, affirmative defenses, and a counterclaim. In Count I of their amended counterclaim, the Hallbecks seek damages for HFS's breach of the RFA and the covenant of good faith and fair dealing. In support of this claim, the Hallbecks allege that HFS "failed to deliver to Defendants a viable franchise concept and a reasonable opportunity to succeed," in the following five, non-exhaustive, ways: (a) failing to provide adequate advertising, "or at all," in the Hallbecks' local market or market area in exchange for the advertising fees the Hallbecks were required to pay; (b) removing any market presence for the Hardee's brand in the Hallbecks' market area, by closing the Hardee's restaurant in Spring Valley, Illinois; (c) denigrating the Hardee's brand image in the Hallbecks' region by running the lewd television ads; (d) failing to

---

[1] In the original complaint, HFS also sought equitable relief, in Count III, related to The Hallbecks' post-termination obligations, including not transferring the franchised property to anyone who would run a similar restaurant at that location. This claim was voluntarily dismissed by HFS upon the filing of the amended complaint with leave of Court.

provide "ongoing support" during the term of the RFA; and (e) "[o]therwise failing to perform as the franchisor." The Hallbecks assert that they suffered damages, including lost out-of-pocket expenses, lost profits, and loss of business reputation.

Count II of the amended counterclaim seeks a declaratory judgment that "under all the facts and circumstances," HFS's claims for future royalties and advertising fees are "unenforceable," the post-termination restrictive covenant regarding transferring the premises is unenforceable, and the personal guarantee is unenforceable. The Hallbecks assert in their amended counterclaim that Illinois law governs the dispute among the parties.

In the motion before the Court, HFS argues that Count I of the amended counterclaim should be dismissed for failure to state a claim. HFS treats the five assertions listed above as separate claims and argues that assertions (a), (b), and (c) should be dismissed with prejudice because they are precluded by the express terms of Section 5.B of the RFA, quoted above; and that assertions (d) and (e) should be dismissed without prejudice because they are conclusory. With regard to Count II of the counterclaim, HFS argues that it should be dismissed as duplicative, as it raises issues already before the Court as the result of HFS's complaint and the Hallbecks' affirmative defenses.

The Hallbecks argue that HFS focuses on the individual elements of the amended counterclaim, rather than on "the overall pattern of its breaches" and that it was this pattern that damaged the Hallbecks. They argue that the contractual discretion granted

HFS [in Section 5.B of the RFA] does not negate HFS's duties of performance owed to the Hallbecks, and that HFS violated the express language of the "Recitals" section of the RFA.

**DISCUSSION**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). However, a plaintiff need only allege facts that permit the reasonable inference that the defendant is liable, even if the complaint "'strikes a savvy judge that actual proof of the facts alleged is improbable and recovery 'very remote and unlikely.'" Hamilton v. Palm, 621 F.3d 816, 819 (8th Cir. 2010) (quoting Braden v. Wal-Mart Stores, 588 F.3d 585, 594 (8th Cir. 2009)). Written instruments attached to the complaint become part of it for all purposes. Quinn v. Ocwen Fed. Bank FSB, 470 F.3d 1240, 1244 (8th Cir. 2006) (citing Fed. R. Civ. P. 10(c)). "'For that reason, a court ruling on a motion to dismiss under Rule 12(b)(6) may consider material attached to the complaint.'" Id. (citation omitted).

In their briefs on HFS's motion to dismiss the amended counterclaim, the parties do not discuss which state's law applies to the issues now before the Court. HFS cites to Missouri cases in support of its arguments; the Hallbecks cite primarily to cases applying Illinois law, but note that the relevant legal standard under Missouri law is similar. The Illinois Franchise Disclosure Act does not address choice of law as to claims between

HFS [in Section 5.B of the RFA] does not negate HFS's duties of performance owed to the Hallbecks, and that HFS violated the express language of the "Recitals" section of the RFA.

**DISCUSSION**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). However, a plaintiff need only allege facts that permit the reasonable inference that the defendant is liable, even if the complaint "'strikes a savvy judge that actual proof of the facts alleged is improbable and recovery 'very remote and unlikely.'" Hamilton v. Palm, 621 F.3d 816, 819 (8th Cir. 2010) (quoting Braden v. Wal-Mart Stores, 588 F.3d 585, 594 (8th Cir. 2009)). Written instruments attached to the complaint become part of it for all purposes. Quinn v. Ocwen Fed. Bank FSB, 470 F.3d 1240, 1244 (8th Cir. 2006) (citing Fed. R. Civ. P. 10(c)). "'For that reason, a court ruling on a motion to dismiss under Rule 12(b)(6) may consider material attached to the complaint.'" Id. (citation omitted).

In their briefs on HFS's motion to dismiss the amended counterclaim, the parties do not discuss which state's law applies to the issues now before the Court. HFS cites to Missouri cases in support of its arguments; the Hallbecks cite primarily to cases applying Illinois law, but note that the relevant legal standard under Missouri law is similar. The Illinois Franchise Disclosure Act does not address choice of law as to claims between

franchisors and Illinois franchisees, other than as to jurisdiction and venue. Accordingly, the Court concludes that the provision in the RFA that Missouri law shall govern claims between the parties, arising out of the RFA, applies here.

"When a state's highest court has not decided an issue, it is up to [the federal district court sitting in diversity] to predict how the state's highest court would resolve that issue." Continental Cas. Co. v. Advance Terrazzo & Tile Co., 462 F.3d 1002, 1007 (8th Cir. 2006). Decisions of intermediate state appellate courts are persuasive authority that the federal court should follow when they are the best evidence of what state law is. Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 534 (8th Cir. 2006); United Fire & Cas. Ins. Co. v. Garvey, 328 F.3d 411, 413 (8th Cir. 2003).

The Court first concludes that the Hallbecks have failed to state a claim for violation of the express terms of the RFA. The Recitals section of the RFA does not impose any specific contractual obligations upon HFS, and the Hallbecks point to no other express contract provision that was allegedly violated by HFS. This leaves the Hallbecks' claim for breach of the implied covenant of good faith and fair dealing.

Under Missouri law, a claim for breach of the implied covenant of good faith and fair dealing is a contractual claim. Koger v. Hartford Life Ins. Co., 28 S.W.3d 405, 413 (Mo. Ct. App. 2000). The good faith requirement imposed by law on every contract extends "to the manner in which a party employs discretion conferred by a contract." BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 914 (8th Cir. 2007) (applying Missouri law). To establish a violation of the covenant of good faith and fair dealing, a

plaintiff must show that the defendant exercised its discretion "in such a matter as to evade the spirit of the transaction or so as to deny [the claimant] the expected benefit of the contract." Id.; see also Acetylene Gas Co. v. Oliver, 939 S.W.2d 404, 410 (Mo. Ct. App. 1996).

> The law does not allow the implied covenant of good faith and fair dealing to be an everflowing cornucopia of wished-for legal duties; indeed, the covenant cannot give rise to new obligations not otherwise contained in a contract's express terms. Glass v. Mancuso, 444 S.W.2d 467, 478 (Mo. 1969). The implied covenant simply prohibits one party from "depriv[ing] the other party of its expected benefits under the contract." Morton v. Hearst Corp., 779 S.W.2d 268, 273 (Mo. Ct. App. 1989).

Comprehensive Care Corp. v. RehabCare Corp., 98 F.3d 1063, 1066 (8th Cir. 1996)

"That duty prevents one party to the contract from exercising a judgment conferred by the express terms of [the] agreement in such a manner as to evade the spirit of the transaction or so as to deny the other party the expected benefit of the contract." Stone Motor Co. v. Gen. Motors Corp., 293 F.3d 456, 467 (8th Cir. 2002) (citing Amecks, Inc. v. Sw. Bell Tel. Co., 937 S.W.2d 240, 243 (Mo. Ct. App. 1996)). "[T]he implied duty of one party to cooperate with the other party to a contract to enable performance and achievement of expected benefits is an enforceable right.'" Id. (quoting Koger v. Hartford Life Ins. Co., 28 S.W.3d 405, 412 (Mo. Ct. App. 2000)).

Here, the Court believes that the Missouri Supreme Court would reject HFS's argument that the Hallbecks will be unable, as a matter of law, to prevail on a claim that HFS exercised its duties and discretion related to the HNAF, under Section 5.B of the RFA, in a manner "so as to deny [the Hallbecks] the expected benefit of the contract."

See id. at 467-68 (reversing grant of summary judgment because genuine issue of material fact existed as to whether franchisor exercised its discretion under franchise agreement with automobile dealership franchisee to provide vehicles to franchisee, so as to evade spirit of agreement or deny franchisee expected benefit of the agreement). Thus, the Court will deny HFS's motion to dismiss Count I of the amended counterclaim with respect to the Hallbecks' assertions regarding the nature of the advertising.

However, HFS's contractual duties do not encompass an obligation to keep the Valley Spring, Illinois, Hardee's open or to advertise directly in the Ottawa Hardee's market area. Accordingly, the Court agrees with HFS that HFS's failure to do so cannot be the basis of a claim for damages against HFS, even under a theory of breach of the implied contract of fair dealing and good faith. As stated above, the covenant of good faith and fair dealing "cannot give rise to new obligations not otherwise contained in a contract's express terms." Glass, 444 S.W.2d at 478.

The Court also agrees with HFS that the Hallbecks' assertions in their amended counterclaim that HFS breached the express or implied terms of the RFA by failing to provide "ongoing support" during the term of the RFA and otherwise failing to perform as the franchisor are too conclusory to support claims against HFS. Even the liberal standards of notice pleading require some factual allegations that state a cause of action and put a party on notice of the claim against it. Mattes v. ABC Plastics, Inc., 323 F.3d 695, 699 (8th Cir. 2003) (affirming dismissal for failure to state a claim for breach of contract under Missouri law where complaint gave no notice of how the defendant was

alleged to have breached the alleged contract to guarantee a loan).

The part of Count II of the amended counterclaim that seeks a declaration that the post-termination restrictive covenant regarding transferring the premises is unenforceable has been rendered moot by the dismissal of Count III of the original complaint. With regard to the remainder of Count II, which essentially seeks a declaratory judgment that the Hallbecks' position on HFS's claims is right, the Court agrees with HFS that it is redundant and should be dismissed as such. See Mille Lacs of Chippewa Indians v. Minn., 152 F.R.D. 580, 582 (D. Minn. 1993); Wright, Miller, & Kane, 6 Fed. Prac. & Proc. § 1406 ("When the request for declaratory relief brings into question issues that already have been presented in plaintiff's complaint and defendant's answer to the original claim," courts often exercise their discretion to dismiss the counterclaim "on the ground that it is redundant and a decision on the merits of plaintiff's claim will render the request for a declaratory judgment moot.").

Lastly, although the Court believes that Missouri law applies to the questions now under consideration, the Court concludes that the same results reached above would be reached applying Illinois law. See, e.g., Interim Health Care of N. Ill., Inc. v. Interim Health Care, Inc., 225 F.3d 876, 884 (7th Cir. 2000) ("In Illinois, a covenant of good faith and fair dealing is implied in every contract absent express disavowal. Problems relating to good faith performance are most common where one party to an agreement is given wide discretion, and the other party must hope the discretion is exercised fairly. . . . When one party to a contract is vested with contractual discretion, it must exercise that

discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously or in a manner inconsistent with the reasonable expectations of the parties.").

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to dismiss Defendants' amended counterclaim is **DENIED** in part and **GRANTED** in part as to Count I; and **GRANTED** as to Count II. [Doc. #39]

**IT IS FURTHER ORDERED** that on or before March 10, 2011, the parties shall confer and notify the Court which disputes raised in the four pending motions to compel discovery (Doc. #72, Doc. #88, Doc. #113, Doc. #136) and in the motion to exclude opinions, reports, and testimony of Bruce Schaeffer (Doc. #121) remain to be resolved by the Court. The parties shall also advise the Court of any other pending motions that are affected by the above rulings.

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of March, 2011.