UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

HARDEE'S FOOD SYSTEMS, INC.,           )
                                        )
    Plaintiff / Counterclaim Defendant, )
                                        )
        v.                              )     No.  4:09CV00664 AGF
                                        )
JEFFREY T. HALLBECK, DIANNE             )
HALLBECK, SCOTT HALLBECK, ROBIN         )
HALLBECK, and CAROLYN HALLBECK,         )
                                        )
    Defendants / Counterclaim Plaintiffs. )

## MEMORANDUM AND ORDER

This diversity case arises out of the closing of a Hardee's franchise in Ottawa, Illinois, approximately one and one-half years before the end of a Renewal Franchise Agreement between the parties, Hardee's Food Systems, Inc. ("HFS") and five individuals collectively referred to herein as the Hallbecks.  Currently before the Court is the motion of the Hallbecks for summary judgment on all counts of the amended complaint.[1]  For the reasons set forth below, this motion shall be denied.

## BACKGROUND

Plaintiff HFS, a company whose principle place of business is in Missouri, is engaged in the business of operating and licensing others to operate quick-service

---

[1]   The Hallbecks' motion also sought summary judgment on Court II of its amended counterclaim.  This count was subsequently dismissed by the Court.  (Doc. No. 138 & Doc. No. 168.)

restaurants using the "Hardee's" service mark and proprietary methods and procedures developed by HFS.  HFS entered into a five-year Renewal Franchise Agreement (the "Agreement") with the Hallbecks, residents of Wisconsin, pursuant to which the Hallbecks, as franchisees, were to continue to operate the Hardee's restaurant in Ottawa, Illinois, until June 19, 2010.  The Agreement provided that Missouri law shall govern all claims or controversies arising out of the Agreement.  Contemporaneous with the Agreement, the parties signed a "Renewal Addendum," and an Addendum "Required for Illinois Franchises," which adds to the Agreement that the Illinois Franchise Disclosure Act shall govern the Agreement.

      The Hallbecks' obligations set forth in the Agreement included the payment to HFS of royalty fees and advertising fees, based on a percentage of the restaurant's gross sales.  HFS's obligations included maintaining the Hardee's National Advertising Fund, which, according to the Agreement, was designed for the creation and development of advertising, marketing, and related activities, and was established and maintained by means of advertising fees collected from franchisees.

      The Agreement provided that the prevailing party in any judicial proceedings to enforce the Agreement would be entitled to expenses and attorney's fees.  The Agreement further provided that any claims between the parties would be governed by Missouri law; the Illinois Addendum stated that notwithstanding the foregoing, the Illinois Franchise Disclosure Act would govern the Agreement.  In addition to the Agreement and addenda, all the Hallbecks, except Diane Hallbeck, signed a personal guarantee guaranteeing their

performance under the Agreement.

The record establishes that the Hallbecks first opened the Ottawa franchise as a Hardee's restaurant in the early 1970's, and formerly owned 21 Hardee's restaurant franchises.  The Hallbecks allege that at some point during the renewal franchise term, prior to February 2009, HFS aired lewd TV commercials, which, the Hallbecks allege, resulted in repeated complaints from the Ottawa Hardee's customers.  In April 2008, HFS closed its Hardee's restaurant in Spring Valley, Illinois, leaving the Hallbecks' Ottawa restaurant as the last remaining Hardee's in its market area.  The Hallbecks further allege that "[s]upport from [HFS] during [D]efendants' final renewal term was limited to two annual visits by the [HFS] representative assigned to the Ottawa store and audits done by EcoSure."

According to the Hallbecks, the Ottawa Hardee's began sustaining declining net profits and/or annual losses.  Although the Agreement provided for operation of the Ottawa franchise until June 19, 2010, the Hallbecks closed the restaurant on February 22, 2009.  On February 27, 2009, HFS sent the Hallbecks a Notice of Default and Termination, stating, "In accordance with the [Agreement] and Illinois law, based upon [your abandonment of the franchised business] the [Agreement] is terminated as of February 28, 2009."

In Count I of its amended complaint, HFS seeks damages resulting from the early termination by the Hallbecks of the Agreement, in the form of the fees HFS would have been paid during the remaining term of the Agreement, in the amount of approximately

$50,000. In Count II, HFS seeks the same damages from four of the Hallbecks (all but Diane Hallbeck) for breach of their personal guarantees. In both of these counts, HFS also seeks attorney's fees, pursuant to the Agreement.[2] The Hallbecks filed a counterclaim, in which they seek, among other relief, lost profits resulting from HFS's alleged failure to provide adequate advertising.

In support of their motion for summary judgment, the Hallbecks argue that Illinois law applies to the Agreement and that an Illinois court would, based upon cases from other jurisdictions, hold that any prospective royalty and advertising fees are not recoverable by Hardee's. The Hallbecks assert such amounts are not recoverable for several reasons, including that the provision in the Agreement providing for the payment of the fees in question survives termination of the Agreement, that there is no liquidated damages provision in the Agreement allowing the collection of future fees for services not performed, that it is against public policy, and that the fees that HFS seeks are too speculative. The Hallbecks also assert that HFS was the party that actually terminated the Agreement by the letter dated February 27, 2009, and that HFS was itself in material breach of the Agreement by not advertising in the Hallbecks' market area and by airing the lewd advertisements.

In response to the motion for summary judgment, HFS has submitted two reports of its damages expert, Christina Solomon, dated November 8, 2010, and a supplemental

---

[2] A third count was voluntarily dismissed by HFS.

report dated December 15, 2010. (Pl.'s Exs. B & G; Doc. Nos. 115-2 & 115-7.) These reports take into account projected sales for the Ottawa Hardee's, based on financial schedules submitted by the Hallbecks; the applicable royalty rate and advertising fee rate; the duration of time lost profits are applicable; the expenses HFS "saved" once the Ottawa Hardee's closed; and the time-value of money. Ms. Solomon concludes that total damages as of March 15, 2009, amounted to $50,399.

## DISCUSSION

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. Fed. R. Civ. P. 56. "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Gazal v. Boehringer Ingelheim Pharm., Inc.*, 647 F.3d 833, 837-38 (8th Cir. 2011). In a diversity case, a federal court applies the substantive law of the forum state and attempts to anticipate how the highest state court would decide the state law issues. *Council Tower Ass'n v. Axis Specialty Ins. Co.*, 630 F.3d 725, 728 (8th Cir. 2011).

This Court has previously concluded that Missouri law governed the claims such as the present claims that arise out of the Renewal Franchise Agreement. (Doc. No. 138 at 7-8). The Hallbecks do not cite to any provisions of the Illinois Franchise Disclosure Act that are relevant to HFS's claims under consideration.

Under Missouri law, generally, "[l]ost profits related to a breach preventing

- 5 -

performance are recoverable provided the loss is the natural and proximate result of the breach, is ascertainable with reasonable certainty, is not speculative or conjectural, and was within the contemplation of the parties when the contract was made." *Farmers' Elec. Co-op., Inc. v. Mo. Dep't of Corr.*, 59 S.W.3d 520, 522 (Mo. 2011); *see also United Indus. Syndicate v. W. Auto Supply Co.*, 686 F.2d 1312, 1316 (8th Cir. 1982).

Addressing facts and arguments almost identical to those presented here, the Fourth Circuit in *Meineke Car Care Ctrs., Inc. v. RLB Holdings*, *LLC*, 423 F. App'x 274, 284 (4th Cir. 2011), recently rejected the arguments for summary judgment raised by the franchisee in that case. Although the case applied North Carolina law, the analysis draws on basic contract damages principles and takes a "straightforward" approach to the principle that a non-breaching party is entitled to recover damages that are the proximate consequence of a breach of contract. *Id.* at 282. This Court believes that the Missouri Supreme Court would take the same approach, and conclude that the Hallbecks' closure of the Ottawa Hardee's could serve as the proximate cause of any lost profits to HFS. In addition, under the applicable law, on this record, a genuine fact issue exists as to whether HFS would have realized future profits. A fact finder could reasonably find that absent the closure, some revenue would have been realized from continued operation, and the length of operations and amount of revenue that might have been derived are fact issues. As the Fourth Circuit held in *Meineke*, the absence of an explicit contract provision as to future damages and of a liquidated damages provision does not warrant summary judgment in favor of a franchisee that breaches a franchise agreement mid-term.

Rather, genuine issues of material fact exist as to whether lost royalties and advertising fund contributions in the event of a breach were reasonably within parties' contemplation at the time they entered into the Agreement.  *See Meineke*, 423 F. App'x at 287.[3]  Nor can the Court say as a matter of law that the Hallbecks were relieved of their contractual obligations by prior conduct of HFS related to HFS's advertising obligations.

The Hallbecks' reliance on *Postal Instant Press, Inc. v. Sealy*, 51 Cal. Rptr. 2d 365 (Cal. Ct. App. 1996), for the proposition that HFS is not entitled to any future fees because HFS terminated the agreement by the February 27, 2009 letter, is misplaced.  In that case, the franchisor elected to terminate the franchise agreement after the franchisee stopped paying certain fees, not as here, after the franchisee abandoned the franchise. The California appellate court specifically stated that it wished to make clear it was "not holding franchisors can never collect lost future royalties for franchisees' breaches of the franchise agreement.  That entitlement depends on the nature of the breach and whether the breach itself prevents the franchisor from earning those future royalties."  *Id.* at 1713.

The Hallbecks' reliance on *Medicine Shoppe International, Inc. v. TLC Pharmacy, Inc.*, No 4:09CV00683 AGF (E.D. Mo. July 12, 2010), is also unavailing.  That case was decided on a motion for default judgment by the plaintiff, not as here, on a motion for summary judgment by Defendants.  In *Medicine Shoppe* the Court held that, on the record before it, the plaintiff failed to prove as a matter of law that future license fees were

---

[3] The Court notes that the Hallbecks relied in significant measure on the lower court's decision in *Meineke*, which the Fourth Circuit reversed.

within the contemplation of the parties when the licensing contract between them was made.  This is not inconsistent with the conclusion here that a fact question is presented on the issue of the parties' contemplation, precluding summary judgment in favor of the Hallbecks.

With respect to their argument that the damages HFS seeks are too speculative, the Hallbecks assert that Ms. Solomon's reports do not take into account "the termination of the franchise, the fact that plaintiff [sic] had no gross sales, the declining market in which plaintiff had no market presence or any of the costs associated with operation of the franchised business at that location."  (Pl. Br. at 8.)  The Hallbecks are correct that to avoid summary judgment, HFS must provide an adequate basis for estimating its damages with "reasonable certainty."  *See, e.g., Cole v. Homier Distrib. Co.,* 599 F.3d 856, 864 (8th Cir. 2010) ("When a claim involves lost-profit damages, it is enough [under Missouri law] that a plaintiff 'provide[ ] an adequate basis for estimating lost profits with reasonable certainty.'") (quoting *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc*., 155 S.W.3d 50, 54 (Mo. 2005)).  HFS has done so here in the form of Ms. Solomon's reports.  What amount, if any, Plaintiff may receive remains a question of fact to be determined at trial.

Lastly, the Court believes that the Illinois Supreme Court would reach the same conclusions set forth above.  *See e.g., TAS Distrib. Co. V. Cummins Engine Co.*, 491 F.3d 625, 632 (8th Cir. 2007) ("When the profits arise out of a breached contract, those profits are considered an element of the contract and thus, within the contemplation of the

parties at the time the contract was established; these damages are recoverable if proved to be a reasonable degree of certainty.") (applying Illinois law).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **DENIED**. (Doc. No. 106.)

*[signature]*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 21st day of September, 2011.