UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

HARDEE'S FOOD SYSTEMS, INC., )
)
   Plaintiff / Counterclaim Defendant, )
)
                v. )   No. 4:09CV00664 AGF
)
JEFFREY T. HALLBECK, DIANNE )
HALLBECK, SCOTT HALLBECK, ROBIN )
HALLBECK, and CAROLYN HALLBECK, )
)
   Defendants / Counterclaim Plaintiffs. )

## **MEMORANDUM AND ORDER**

This diversity case arises out of the closing of a Hardee's franchise in Ottawa, Illinois, approximately one and one-half years before the end of a Renewal Franchise Agreement ("Agreement") between Plaintiff Hardee's Food Systems, Inc. ("HFS") as franchisor, and five individuals collectively referred to herein as the Hallbecks, as franchisees. HFS seeks damages in the amount of approximately $50,000, in lost future franchise fees, under the Agreement and under a personal guarantee signed by all of the Hallbecks except Dianne Hallbeck.

Currently before the Court is HFS's motion (Doc. No. 145) for summary judgment on the Hallbecks' counterclaim asserting that HFS breached the implied covenant of good faith and fair dealing by running certain "lewd" television advertisements. Also before the Court is HFS's motion (Doc. No. 171) to dismiss the Hallbecks' (second amended)

counterclaim asserting that HFS breached the Agreement and the implied covenant of good faith by treating the Hallbecks less favorably than other franchisees, and by seeking to enforce a provision in the Agreement restricting the Hallbecks' transfer of the property on which the Ottawa restaurant stood. For the reasons set forth below, these motions shall be granted.

## BACKGROUND

Many of the relevant background facts are presented in this Court's Memorandum and Order (Doc. No. 138) granting HFS's motion to dismiss several counterclaims asserted by the Hallbecks. For clarity, the relevant facts will be set forth here. HFS is engaged in the business of operating and licensing others to operate quick-service restaurants using the "Hardee's" service mark and proprietary operations procedures. HFS entered into a five-year Renewal Franchise Agreement ("Agreement") with the Hallbecks, pursuant to which the Hallbecks were to continue to operate the Hardee's restaurant in Ottawa, Illinois, until June 19, 2010.

The Hallbecks' obligations set forth in the Agreement included the payment to HFS of royalty fees and advertising fees, based on a percentage of the restaurant's gross sales. HFS's obligations included maintaining the HFS National Advertising Fund ("HNAF"), pursuant to Section 5.B of the Agreement, which provided, in relevant part, as follows:

> **Hardee's National Advertising Fund**
>
> HFS has established, and will maintain and administer the HNAF for

the creation and development of advertising, marketing and public relations, research and related programs, activities and materials that HFS, in its sole discretion, deems appropriate. Franchisee shall contribute to HNAF the amount set forth in [the Agreement].

* * *

HFS or its designee shall direct all advertising, marketing, and public relations programs and activities financed by HNAF, with sole discretion over the creative concepts, materials and endorsements used in those programs and activities, and the geographic, market and media placement and allocation of advertising and marketing materials.

* * *

**Franchisee understands and acknowledges that HNAF is intended to enhance recognition of the Proprietary Marks and patronage of Hardee's Restaurants. HFS will endeavor to utilize HNAF to develop advertising and marketing materials and programs, and to place advertising that will benefit the System and all Hardee's Restaurants contributing to HNAF. However, Franchisee agrees that HFS is not liable to Franchisee and Franchisee forever covenants not to sue and holds HFS harmless of any liability or obligation to ensure that expenditures by HNAF in or affecting any geographic area (including the Franchised Location) are proportionate or equivalent to the contributions to HNAF by Hardee's Restaurants operating in that geographic area, or that any Hardee's Restaurant will benefit directly or in proportion to its contribution to HNAF from the development of advertising and marketing materials or the placement of advertising. Except as expressly provided in this Section 5, neither HFS nor its designee assumes any direct or indirect liability to Franchisee with respect to the maintenance, direction or administration of HNAF.**

Section 29.C. of the Agreement provided as follows: "**HFS has entered, and will continue to enter, into agreements with other franchisees. The manner in which HFS enforces its rights and the franchisees' obligations under any of those other agreements shall not affect the ability of HFS to enforce its rights or Franchisee's**

**obligations under this Agreement.**"

The Agreement stated that any claims between the parties would be governed by Missouri law; the Illinois Addendum stated that notwithstanding the foregoing, the Illinois Franchise Disclosure Act would govern the Agreement. In addition to the Agreement and addenda, all the Hallbecks, except Dianne Hallbeck, signed a personal guarantee guaranteeing their performance under the Agreement.

The record establishes that the Hallbecks first opened the Ottawa franchise as a Hardee's restaurant in the early 1970's and formerly owned 21 Hardee's franchises. In April 2008, HFS closed its Hardee's restaurant in Spring Valley, Illinois, leaving the Hallbecks' Ottawa restaurant as the last remaining Hardee's restaurant in its market area (Chicago, Illinois).

The Hallbecks closed the Ottawa restaurant on February 22, 2009. On February 27, 2009, HFS sent the Hallbecks a Notice of Default and Termination, stating, "In accordance with the Agreement and Illinois law, based upon [your abandonment of the franchised business] the [Agreement] is terminated as of February 28, 2009."

The Hallbecks' counterclaim upon which HFS seeks summary judgment claims that by running the lewd ads, HFS exercised its duties and discretion related to the HNAF in a manner so as to deny the Hallbecks the expected benefit of the contract, in violation of the implied contract of good faith and fair dealing. The Hallbecks allege that they received repeated complaints about the ads from customers in Ottawa's "predominantly agricultural and union oriented community, about the unacceptable nature of these ads."

As damages, the Hallbecks seek "a. Lost out of pocket expenses; b. Lost business opportunities; c. Lost profits; d. Lost or diminished value of the goodwill and capital value of their business; e. Lost business reputation; and, f. Loss of time and money, including the payment of court costs and attorneys' fees."

HFS previously moved to dismiss this counterclaim. By Memorandum and Order dated March 3, 2011, the Court, in an abundance of caution, denied HFS's motion, pending development of the record. The record now establishes that from August 2004 through July 2009, HFS aired the ads in question. Jeffrey Hallbeck testified by deposition dated December 1, 2010, that before the Hallbecks entered into the Agreement, he was aware that HFS was producing these ads and that they were being aired in various HFS market areas, and that he was "unhappy with it." (Doc. No. 146-4 at 83-86.)

According to the March 14, 2011 sworn declaration of Steve Lemley, HFS's Senior Vice-President of Marketing, HFS's purpose in producing these ads was to appeal to a particular target demographic – 18-49 year old males – which HFS sees as important to the success of the Hardee's brand nationwide as it competes with larger chains of quick-service restaurants with larger advertising budgets. (Doc. No. 146-6). Lemley further attested that HFS aired all of the ads in all market areas in which all the Hardee's restaurants were operated by HFS itself, whereas the decision whether to run the ads in other market areas was made by individual advertising cooperatives composed of the operators of Hardee's restaurants within the market area – both those owned by HFS

itself and those owned by franchisees.  *Id.*

## **DISCUSSION**

### **HFS's Motion for Summary Judgment on Counterclaim for Breach of Duty of Fair Dealing**

Summary judgment is appropriate only when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c)(2).  Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party.  *Minn. Deli Provisions, Inc. v. Boar's Head Provisions Co., Inc.*, 606 F.3d 544, 548 (8th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Although the Court must view the facts and inferences in the light most favorable to the Hallbecks, they have "the obligation to come forward with specific facts showing that there is a genuine issue for trial."  *See id.* (citing *Matsushita Elec. Indust. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)).

Reviewing the record in the light most favorable to the Hallbecks, the Court concludes that HFS is entitled to summary judgment on the Hallbecks' counterclaim for breach of the implied covenant of good faith by airing the ads in question.[1]  The record now establishes that no reasonable factfinder could find that HFS breached the implied

---

[1] Missouri law applies here, as explained in the Court's Memorandum and Order of March 3, 2011.  As a federal court sitting in diversity, it is the Court's role to predict how that state's highest court would resolve the issues.  *See Continental Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1007 (8th Cir. 2006).

covenant by its challenged actions. Under Missouri law, a covenant of good faith and fair dealing is imposed on every contract. When, as here, a decision is left to the discretion of one party, "the question is not whether the party made an erroneous decision but whether the decision was made in bad faith or was arbitrary or capricious so as to amount to an abuse of discretion." *Mo. Consolidated Health Care Plan v. Community Health Plan,* 81 S.W.3d 34, 48 (Mo. Ct. App. 2002). The covenant is "only an obligation imposed by law to prevent opportunistic behavior, that is, the exploitation of changing economic conditions to ensure gains in excess of those reasonably expected at the time of contracting." *Schell v. LifeMark Hosps. of Mo.*, 92 S.W.3d 222, 230 (Mo. Ct. App. 2002) (citations omitted). "The party claiming breach of the implied covenant of good faith must present substantial evidence that it has been violated." *Id.*

Here, viewing the facts in the light most favorable to the Hallbecks, the Court concludes that the Hallbecks have failed to provide any evidence of bad faith on HFS's part in producing and airing the ads in question. *See Mo. Consolidated Health Care Plan*, 81 S.W.3d at 48-49 (holding that the trial court erred in denying the defendant's motion for a directed verdict on breach of implied covenant where the plaintiff did not present any evidence of bad faith on the defendant's part in exercising its discretion to deny a premium rate increase, but rather relied on evidence of a significant adverse financial condition in regard to the contract).

**HFS's Motion to Dismiss Remaining Counterclaims**

In their second amended counterclaim, the Hallbecks also assert that HFS

breached the Agreement and the covenant of good faith and fair dealing by (1) discriminating against them in (a) failing to allow them a reduction in license fees while granting another franchisee in the same region a reduction in these fees, (b) failing to provide advertising support for the Ottawa restaurant, and (c) insisting that the Ottawa restaurant remain open while closing HFS's own Spring Valley restaurant; and by (2) seeking to enforce the restrictive covenant barring the sale of the property on which the Ottawa restaurant had been operating, when HFS knew or should have known that the covenant was unenforceable under Illinois law.

To survive a 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," but the allegations must nonetheless "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility' of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 557). A plaintiff need only allege facts that permit the reasonable inference that the defendant is liable, even if the complaint "strikes a savvy judge that actual proof of the facts alleged is improbable" and recovery "very remote and unlikely." *Hamilton v. Palm*, 621 F.3d 816, 819 (8th Cir. 2010) (quoting another source).

The Court agrees with HFS that Section 29.C of the Agreement, quoted above, precludes the Hallbecks' claims that HFS breached the Agreement and the implied covenant of good faith by not treating the Hallbecks as favorably as other franchisees

with respect to the matters set forth in the second amended counterclaim. Pursuant to Section 29.C, the Hallbecks agreed that the manner in which HFS enforced its rights and the obligations of other franchisees would not affect HFS's ability to enforce its rights or the Hallbecks' obligation under the Agreement.

Furthermore, case law from other jurisdictions (including Illinois), rejecting claims by a franchisee based on discrepancy in treatment by a franchisor, convinces the Court that HFS's motion to dismiss as to the Hallbecks' "discrimination" claims should be granted. *See, e.g., Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 279 (7th Cir. 1992); *Mathews v. George Weston Bakeries Distribution, Inc.*, No. 06-14875-BC, 2007 WL 2952155, at *4 (E.D. Mich. Oct. 9, 2007); *Zeidler v. A&W Restaurants, Inc.,* No. 99 C 2591, 2001 WL 62571, at *4 (N. D. Ill. Jan. 25, 2001).

Lastly, the Court concludes that Missouri courts would hold that the Hallbecks' assertion that HFS breached the Agreement and the implied covenant of good faith by seeking to enforce a contractual provision to which the Hallbecks agreed, limiting their freedom to transfer their Ottawa franchised location for two years, also fails to state a claim. *See State v. Nationwide Life Ins. Co.*, 340 S.W.3d 161, 194 (Mo. Ct. App. 2011) ("An implied covenant will not, however, be imposed where the parties expressly address the matter at issue in their contract.").[2]

---

[2] The Court concludes that the same results reached above would be reached applying Illinois law. *See, e.g., Interim Health Care of N. Ill., Inc. v. Interim*

# CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment on Defendants' counterclaim for breach of the implied covenant of good faith due to the Defendants' airing certain advertisements is **GRANTED**.  (Doc. No. 145)

**IT IS FURTHER ORDERED** that Plaintiff's motion to dismiss Defendants' remaining counterclaims is **GRANTED**.  (Doc. No. 171)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of November, 2011

---

*Health Care, Inc.*, 225 F.3d 876, 884 (7th Cir. 2000) (discussing the implied covenant of good faith).